No. 22-10525

# In the United States Court of Appeals
# for the Eleventh Circuit

JERRY BAINBRIDGE, *et al.*,

*Plaintiffs-Appellees*,

v.

STERLING WHISENHUNT, in his official capacity as
Director of the Florida Division of Alcoholic Beverages and Tobacco,

*Defendant-Appellant.*

Appeal from the United States District Court for the Middle District of Florida
Case No. 8:99-cv-2681-JDW-AEP

## APPELLANT'S OPENING BRIEF

David Axelman
Florida Bar #90872
General Counsel
**Florida Department of Business
and Professional Regulation**
2601 Blair Stone Road
Tallahassee, Florida 32399
David.Axelman@myfloridalicense.com
(850) 717-1241
*Counsel for Defendant-Appellant*

*Bainbridge, et al. v. Whisenhunt*
*Eleventh Circuit Case No. 22-10525*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Pursuant to Rule 26.1 of the Eleventh Circuit Rules, Appellant submits the following complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that Appellant knows or believes to have an interest in the outcome of this appeal:

Axelman, David (counsel for Defendant-Appellant)

Bainbridge, Faye (Plaintiff-Appellee)

Bainbridge, Jerry (Plaintiff-Appellee)

Beer Industry of Florida, Inc.

Bretoi, Gene (Plaintiff-Appellee)

Chateau Thomas Winery, Inc. (Plaintiff-Appellee)

Epstein Cohen Seif & Porter, LLP

Epstein, Robert D. (counsel for Plaintiffs-Appellees)

Florida Beer Wholesalers Association, Inc.

Florida Department of Business and Professional Regulation

Guarnieri, James W. (former counsel for Plaintiffs-Appellees)

Independent Beverage Dealers, Inc.

Lake Ridge Winery & Vineyards

Mullinix-Bretoi, Betty E. (Plaintiff-Appellee)

Rabins, Sy (Plaintiff-Appellee)

*Bainbridge, et al. v. Whisenhunt*
*Eleventh Circuit Case No. 22-10525*

Rabins, Theresa (Plaintiff-Appellee)

San Sebastian Winery

Tanford, James A. (counsel for Plaintiffs-Appellees)

Whisenhunt, Sterling (Defendant-Appellant in his official capacity as Director of the Florida Department of Business and Professional Regulation's Division of Alcoholic Beverages and Tobacco)

Whittemore, The Honorable James D. (United States District Court)

Wine & Spirits Distributors of Florida, Inc.

No publicly traded company or corporation is known to Appellant to have an interest in the outcome of this appeal.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

This appeal arises from the District Court's (and the parties') imprecise use of language in a consent injunction. The State has endeavored in this brief to explain why clarification is necessary and why its understanding of the scope of the injunction is correct. Nonetheless, in light of the perplexing language in the proposed (and actual) consent injunction, the unique posture of this case, and the important policy ramifications of the injunction, the State requests oral argument and respectfully submits that oral argument is likely to aid the decisional process.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ......................................................C1

STATEMENT REGARDING ORAL ARGUMENT ............................................... i

TABLE OF CONTENTS........................................................................................ ii

TABLE OF CITATIONS ...................................................................................... iv

STATEMENT OF SUBJECT-MATTER AND APPELLATE
JURISDICTION................................................................................................. viiii

STATEMENT OF THE ISSUES...........................................................................1

INTRODUCTION ..................................................................................................2

STATEMENT OF THE CASE...............................................................................5

  A. Course of Proceedings and Dispositions Below ...............................................5

  B. Statement of Facts ...........................................................................................8

STANDARDS OF REVIEW ................................................................................13

SUMMARY OF THE ARGUMENT ....................................................................14

ARGUMENT ........................................................................................................18

  I.   THE INJUNCTION IS AMBIGUOUS, AND THE DISTRICT COURT
ERRED IN CONCLUDING OTHERWISE. ......................................................18

    A. The District Court Employed Inconsistent Terminology................................ 19

    B. The Word "Vendors" Can Refer to Retailers or to Vertically Integrated
Wineries that Sell Their Own Wine at Retail.................................................. 20

  II. THE INJUNCTION IS PROPERLY CONSTRUED AS LIMITED TO
WINERIES. .......................................................................................................21

    A. The Judgment Itself is Limited to Wineries................................................... 22

B.  The Parties' Interchangeable Use of the Terms "Wineries" and "Vendors" Demonstrates that the Injunction is Limited to Wineries. ............................. 23

C.  Plaintiffs' Motion for Entry of Judgment Demonstrates that the Injunction is Limited to Wineries. ......................................................................... 24

D.  The Parties' and the District Court's Discussion of the *Granholm* Decision Demonstrates that the Injunction is Limited to Wineries. ............................. 25

E.  The Parties' and the District Court's Efforts to Limit the Scope of the Injunction Demonstrate that the Injunction is Limited to Wineries. ........... 28

III.  THE DISTRICT COURT ERRED BY MISCONSTRUING THE STATE'S MOTION AS ONE GOVERNED BY RULE 60(b)(1)  RATHER THAN RULE 60(a) AND BY DENYING CLARIFICATION. ..........................29

A.  Rule 60(a) Governs the State's Request for Clarification. ........................... 30

B.  The State is Entitled to Clarification Regardless of Rule 60(a). .................. 37

IV.  IF THE DISTRICT COURT EXPANDED THE CONSENT INJUNCTION TO INCLUDE RETAILERS, THE INJUNCTION IS VOID BECAUSE A COURT LACKS THE POWER TO ISSUE A CONSENT INJUNCTION THAT EXCEEDS THE SCOPE OF THE PARTIES' CONSENT. ................................................................................................43

CONCLUSION ....................................................................................................45

CERTIFICATE OF COMPLIANCE ...................................................................47

CERTIFICATE OF SERVICE .............................................................................47

iii

# TABLE OF CITATIONS

**Page(s)**

**Cases**

*Agro Dutch Indus. Ltd. v. U.S.*,
  589 F.3d 1187 (Fed. Cir. 2009).......................................................... 34

*\*Bainbridge v. Turner*,
  311 F.3d 1104 (2002)................................................................. passim

*Blanton v. Anzalone*,
  813 F.2d 1574 (9th Cir. 1987)....................................................... 31, 37

*Brumfield v. La. State Bd. of Educ.*,
  806 F.3d 289 (5th Cir. 2015)............................................................. 45

*Burke v. Smith*,
  252 F.3d 1260 (11th Cir. 2001)...................................................... 14, 43

*Cook v. Birmingham News*,
  618 F.2d 1149 (5th Cir. 1980)........................................................... 38

*Evans v. City of Chi.*,
  10 F.3d 474 (7th Cir. 1993).............................................................. 39

*F.T.C. v. Leshin*,
  618 F.3d 1221 (11th Cir. 2010)...................................................... 13, 18

*Fed. Home Loan Mortg. Corp. v. Matassino*,
  517 F. App'x 687 (11th Cir. 2013) ..................................................... 30

*\*Granholm v. Heald*,
  544 U.S. 460 (2005) .................................................................. passim

*Gulf Power Co. v. Coalsales II, LLC*,
  522 F. App'x 699 (11th Cir. 2013) ..................................................... 14

*Haagen-Dazs Co. v. Marina Ice Cream Co.*,
  935 F.2d 542 (2d Cir. 1991).............................................................. 44

*Hispanics United of DuPage Cnty. v. Vill. of Addison*,
  248 F.3d 617 (7th Cir. 2001)............................................................. 41

*Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*,
    389 U.S. 64 (1967) ................................................................................ 42

*Local No. 93 v. City of Cleveland*,
    478 U.S. 501 (1986) .............................................................................. 44

*McComb v. Jacksonville Paper Co.*,
    336 U.S. 187 (1949) .............................................................................. 38

*Mulhern v. ADT Sec. Svcs., LLC*,
    2019 WL 6307233 (N.D. Ind. Nov. 25, 2019) ..................................... 41

*Mullins v. Nickel Plate Mining Co.*,
    691 F.2d 971 (11th Cir. 1982) .............................................................. 36

*Nisson v. Lundy*,
    975 F.2d 802 (11th Cir. 1992) .............................................................. 33

*O'Sullivan v. City of Chi.*,
    396 F.3d 843 (7th Cir. 2005) ................................................................ 39

*Pasadena City Bd. of Ed. v. Spangler*,
    427 U.S. 424 (1976) .............................................................................. 42

*Pottinger v. City of Mia.*,
    805 F.3d 1293 (11th Cir. 2015) ............................................................ 14

*Regal Knitwear Co. v. N.L.R.B.*,
    324 U.S. 9 (1945) .................................................................................. 37

*Reynolds v. Roberts*,
    251 F.3d 1350 (11th Cir. 2001) ................................................ 43, 44, 45

*Rhodes v. Hartford Fire Ins. Co.*,
    548 F. App'x 857 (4th Cir. 2013) ......................................................... 35

*Rivera v. PNS Stores, Inc.*,
    647 F.3d 188 (5th Cir. 2011) .................................................... 14, 33, 37

*S.E.C. v. Farha*,
    2018 WL 11354497 (M.D. Fla. May 1, 2018) ..................................... 41

*Sartin v. McNair Law Firm PA*,
   756 F.3d 259 (4th Cir. 2014)............................................................. 32, 34

*Schiavo ex rel. Schindler v. Schiavo*,
   403 F.3d 1223 (11th Cir. 2005)............................................................. 14

*Shuffle Tech Int'l, LLC v. Wolff Gaming, Inc.*,
   757 F.3d 708 (7th Cir. 2014)................................................................. 30

*Stovall v. City of Cocoa*,
   117 F.3d 1238 (11th Cir. 1997).............................................................. 41

*U.S. v. Bradley*,
   484 F. App'x 368 (11th Cir. 2012) ........................................................ 13

*U.S. v. City of Mia.*,
   664 F.2d 435 (5th Cir. 1981) (en banc) ................................................ 41

*U.S. v. Griffin*,
   782 F.2d 1393 (7th Cir. 1986)........................................................... 31, 36

*U.S. v. ITT Continental Baking Co.*,
   420 U.S. 223 (1975) ............................................................................... 21

*United Student Aid Funds, Inc. v. Espinosa*,
   559 U.S. 260 (2010) .......................................................................... 44, 45

*Vaughter v. Eastern Air Lines, Inc.*,
   817 F.2d 685 (11th Cir. 1987)........................................................... 33, 35

*Weeks v. Jones*,
   100 F.3d 124 (11th Cir. 1996)................................................................ 31

*Wexler v. Lepore*,
   385 F.3d 1336 (11th Cir. 2004).............................................................. 14

*Wine & Spirits Distribs. of Fla., Inc. v. Arnold's Wines, Inc.*,
   275 So. 3d 555 (Fla. Dist. Ct. App. 2019) ............................................ 13

**Statutes**

28 U.S.C. § 1291 ..................................................................................... viii

28 U.S.C. § 1331 ..................................................................................... viii

Fla. Stat. § 561.02 .................................................. 10

Fla. Stat. § 561.14(1)-(3) .......................................... 2, 21, 24

Fla. Stat. § 561.22(1)............................................... 2

Fla. Stat. § 561.221(1)(a) .......................................... 2, 10

Fla. Stat. § 561.54(1)............................................... 3, 9

Fla. Stat. § 561.545(1).............................................. 3,9,10

**Rules**

Rule 60(a), Fed. R. Civ. P. ......................................... passim

Rule 60(b)(1), Fed. R. Civ. P. ...................................... passim

Rule 60(b)(4), Fed. R. Civ. P. ...................................... passim

Rule 65(d), Fed. R. Civ. P........................................... 40, 41, 42

**Other Authorities**

Fla. Sen. Comm. On Regul. Indus., Rep. No. 2006-146, Direct Shipment Of Wine To Florida Consumers 12–13 (2005), https://www.flsenate.gov/UserContent/Committees/Publications/InterimWorkProgram/2006/pdf/2006-146rilong.pdf. ................................................12, 39

## <u>STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION</u>

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arose under the Commerce Clause of the United States Constitution. This Court has jurisdiction because the order on appeal is a final decision of the District Court. 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Where the District Court entered a consent judgment declaring two Florida statutes to be unconstitutional as applied to "out-of-state wineries," but proceeded to enjoin enforcement against "out-of-state vendors and producers" of wine, did the District Court err in concluding that its injunction is unambiguous and that clarification is unwarranted?

2.      Where the parties used the word "vendors" in their proposed consent injunction, did they use that word to refer to vertically integrated wineries or to wine retailers in general?

3.      Where the State subsequently sought clarification of the scope of the injunction pursuant to Rule 60(a) of the Federal Rules of Civil Procedure, did the District Court err by concluding that the motion was governed by Rule 60(b)(1) instead?

4.      Is the State entitled to clarification of the injunction under Rule 60(a) or otherwise?

5.      Where a district court purports to enter an injunction as a consent injunction, does it have authority to modify the parties' proposed consent injunction in a manner that exceeds the scope of the parties' agreement? If not, is such an injunction void?

## **INTRODUCTION**

The practical issue underlying this appeal is whether the State of Florida may enforce its laws in a manner that has not been adjudicated unconstitutional and in a manner that the State did not concede was unconstitutional when it agreed to an injunction in 2005. While the answer may seem self-evident, an ambiguous phrase that the District Court added to the parties' proposed consent injunction has caused confusion regarding the scope of the injunction that ultimately issued. As a result, the State has interpreted the injunction inconsistently over the years and has recently foregone enforcement even in applications that the District Court did not declare unconstitutional. This appeal arises from the District Court's denial of the State's motion to clarify the scope of the injunction.

The injunction pertains to the enforceability of a portion of Florida's Beverage Law that generally prohibits the sale and delivery of alcoholic beverages directly to Florida consumers from out of state. In Florida, alcoholic beverages are subject to a three-tier distribution system consisting of manufacturers, distributors, and retailers (the latter of which are classified as "vendors" in Florida's Beverage Law). Fla. Stat. § 561.14(3) (2021). Manufacturers generally are prohibited from acting as vendors. Fla. Stat. § 561.22(1) (2021). A statutory exception exists for Florida wineries, which may qualify for a vendor license. Fla. Stat. § 561.221(1)(a) (2021). This statutory exception does not extend to out-of-state

2

wineries, however, which remain subject to the general prohibition against the sale and delivery of alcoholic beverages directly to consumers from out of state (known colloquially as the "direct-shipment" prohibition). Fla. Stat. §§ 561.54(1), 561.545(1) (2021). Plaintiffs alleged that this form of disparate treatment violated the Commerce Clause. Doc. 36 at 5.

During the pendency of this litigation, the Supreme Court ruled that New York and Michigan statutes that subjected in-state and out-of-state wineries to the disparate treatment described above violated the Commerce Clause and were not saved by the Twenty-first Amendment. *Granholm v. Heald*, 544 U.S. 460, 466 (2005). In the wake of that decision, the parties in this case agreed that Florida's disparate treatment of in-state and out-of-state wineries likewise could not survive constitutional scrutiny. Doc. 189-2 at 1. Accordingly, they stipulated to a declaratory judgment that Florida's direct-shipment statutes were unconstitutional as applied to out-of-state wineries. *Id.* at 2. The District Court entered that judgment at their request. Doc. 196.

The parties also stipulated to a permanent injunction but did not specify its scope when they submitted it to the District Court. Doc. 189-2 at 2. Notwithstanding that the District Court had declared the statutes unconstitutional only as applied to out-of-state *wineries*, it modified the parties' proposed consent injunction to provide that the State was enjoined from enforcing the statutes

"against out-of-state vendors and producers." Doc. 196 at 2. The context of the entire order demonstrates that the District Court used the phrase "vendors and producers" to refer only to vertically integrated wineries (i.e., wineries that sell their wine directly to consumers), and not to all wine retailers. The parties' imprecise use of the word "vendors" within the proposed consent order demonstrates that they likewise used the word "vendors" to refer to wineries rather than retailers. Nonetheless, the District Court's addition of the phrase "vendors and producers" has led to considerable confusion regarding the scope of the injunction.

When the injunction issued in 2005, the State understood its scope to be limited in the same manner as the declaratory judgment—i.e., to wineries. It has the same understanding today. However, one of several intervening administrations interpreted it differently in 2018 when it issued a declaratory statement in which it opined that the injunction extends to all out-of-state wine retailers. Doc. 206-1 at 5. Plaintiffs apparently also now contend that the injunction encompasses all wine retailers in addition to wineries. *See* Doc. 207. Therefore, despite the fact that it did not consent to an injunction of that scope and despite the fact that the District Court indisputably did not declare the statutes unconstitutional as applied to all wine retailers, the State has refrained from enforcing its laws against all out-of-state wine retailers. Confronted with the choice of seeking clarification from the District Court or unilaterally reverting to its original interpretation of the injunction

4

and exposing itself to the risk of an order to show cause, the State opted for the former. The District Court nonetheless denied clarification on the erroneous grounds that the injunction is unambiguous and that the State's motion was governed by Rule 60(b)(1) and therefore untimely. Doc. 212 at 3–4.

## STATEMENT OF THE CASE

The Florida Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco ("the State" or "the Division") appeals from an order denying its motion to clarify an ambiguous phrase that the District Court added to the parties' proposed consent injunction at the time the injunction issued. The proper construction of that phrase determines whether the State is enjoined only from enforcing its direct-shipment statutes against out-of-state wineries (as it agreed) or whether it is *also* enjoined from enforcing those statutes against all out-of-state wine retailers despite not having consented to an injunction of that scope. The fundamental issues in this appeal are twofold: whether the State is entitled to clarification at all, and whether the State's original and current understanding of the scope of the injunction are correct despite an intervening administration having interpreted the injunction differently.

### A.  Course of Proceedings and Dispositions Below

The underlying action commenced in 1999, when a group of Florida wine consumers sought a declaration that two Florida statutes prohibiting the direct

delivery of wine from other states violated the Commerce Clause. Doc. 1 at 3, ¶ 6; *id.* at 6. On June 29, 2000, two wineries from Florida[1] and one winery from Indiana joined the litigation as plaintiffs and, together with the wine consumers (collectively, "Plaintiffs") filed an amended complaint. Doc. 36.

The District Court granted summary judgment to the State on July 19, 2001, ruling that "Florida's direct shipment law, although discriminatory as applied to out-of-state wineries in violation of the dormant commerce clause, represents a constitutional regulatory exercise of Florida's sovereign authority pursuant to the Twenty-First Amendment." Doc. 100 at 2. Plaintiffs appealed, and this Court rendered a decision on November 8, 2022. *See Bainbridge v. Turner*, 311 F.3d 1104 (2002). This Court identified the "primary question" in this case as "whether the State of Florida may prohibit out-of-state wineries from shipping their products directly to Florida consumers while permitting in-state wineries to do so." *Id.* at 1106. Finding that "the factual record [was] too incomplete to uphold a judgment as a matter of law for the State," this Court vacated the summary judgment. *Id.*

Following remand, litigation continued until the District Court stayed this case on September 24, 2004. Doc. 177. The District Court explained that three cases were then pending before the Supreme Court in which the question presented was whether a state "regulatory scheme that permits in-state wineries directly to

---

[1] The two Florida wineries voluntarily dismissed their claims on March 31, 2004. Doc. 166.

ship alcohol to consumers but restricts the ability of out-of-state wineries to do so violate [sic] the dormant Commerce Clause in light of Sec. 2 of the 21ˢᵗ Amendment." *Id.* at 2. The District Court noted that the Supreme Court's decisions in those cases would "undoubtedly have precedential importance to this case" and might be dispositive. *Id.* And the parties previously advised the District Court in a joint status report that the Supreme Court's certiorari review in *Granholm* was "limited to [that] question" precisely. Doc. 176 at 1.

On May 16, 2005, the Supreme Court rendered its decision in the aforementioned cases. *Granholm*, 544 U.S. 460. The Supreme Court held that New York and Michigan statutes that "allow[ed] in-state wineries to sell wine directly to consumers in that State" but "prohibit[ed] out-of-state wineries from doing so" violated the Commerce Clause and were not saved by the Twenty-first Amendment. *Id.* at 466. In light of the Supreme Court's *Granholm* decision, the District Court in this case conducted a status conference on May 25, 2005. Doc. 183. The minutes of that status conference reflect that the District Court took note of the *Granholm* decision, authorized Plaintiffs to "file a dispositive motion[,]" and directed the parties to "submit a joint proposed order to the Court" if they could agree on its content. *Id.* Plaintiffs then filed an "Agreed Motion for Judgment on the Pleadings" and an accompanying proposed consent order on June 23, 2005. Doc. 188, 189-2. After modifying some of the language in the proposed consent

order, the District Court entered final judgment and a permanent injunction on August 5, 2005. Doc. 196.

On November 22, 2021, the State filed a Motion to Clarify and Modify (or in the Alternative, to Vacate) Injunction. Doc. 206. Plaintiffs filed a brief in opposition on December 2, 2021. Doc. 207. On December 6, 2021, the State moved for leave to file a reply brief. Doc. 208. The District Court denied that motion the next day. Doc. 210. The District Court then denied the State's motion for clarification on January 19, 2022. Doc. 212. Thereafter, the State moved for reconsideration on February 10, 2022. Doc. 215. The District Court denied that motion the following day. Doc. 216. The State filed its Notice of Appeal on February 16, 2022. Doc. 217.

### B.    Statement of Facts

The State seeks clarification of the operative portion of a final order that provides as follows:

> It is ADJUDGED that Florida Statutes §§ 561.54 and 561.545 violate the Commerce Clause *to the extent that* they discriminate against out-of-state *wineries* by prohibiting them from selling and delivering wine directly to customers in Florida when in-state *wineries* are not so prohibited.

> IT IS FURTHER ORDERED that Defendant is ENJOINED from enforcing Florida Statutes §§ 561.54 and 561.545 against out-of-state *vendors and producers*.

Doc. 196 at 2 (emphasis added).[2]

The District Court entered the foregoing order on Plaintiffs' "Agreed Motion for Judgment on the Pleadings[.]" *Id.*; Doc. 188; Doc. 212 at 3 (emphasizing that "this was an *agreed* injunction entered on an *agreed* motion"). That motion was accompanied by a proposed consent order. Doc. 189-2. Plaintiffs advised the District Court that they and the State "conferred and agree on the wording of the proposed Order filed with this motion, and that judgment should be entered upon it." Doc. 188 at 2. The proposed consent order did not contain the phrase "vendors and producers."[3] Doc. 189-2.

The two statutes cited in the order ("the Statutes") comprise Florida's direct-shipment laws. Then and now, Section 561.54(1) provides that it is

> unlawful for common or permit carriers, operators of privately owned cars, trucks, buses, or other conveyances or out-of-state manufacturers or suppliers to make delivery from without the state of any alcoholic beverage to any person, association of persons, or corporation within the state, except to qualified manufacturers, distributors, and exporters of such beverages so delivered and to qualified bonded warehouses in this state.

Fla. Stat. § 561.54(1) (2021). Similarly, Section 561.545(1) provides that

---

[2] For ease of reference, the first paragraph is sometimes referred to as "the declaratory judgment," and the second paragraph as "the injunction."

[3] Unlike the injunction, the District Court adopted the parties' proposed declaratory judgment verbatim. Doc. 189-2 at 2; Doc. 196 at 2. The State neither challenges nor seeks clarification of the declaratory judgment itself.

> [a]ny person in the business of selling alcoholic beverages who knowingly and intentionally ships, or causes to be shipped, any alcoholic beverage from an out-of-state location directly to any person in this state who does not hold a valid manufacturer's or wholesaler's license or exporter's registration issued by the Division of Alcoholic Beverages and Tobacco or who is not a state-bonded warehouse is in violation of this section.

Fla. Stat. § 561.545(1) (2021). Pertinent to this litigation, Florida law also authorized (and still authorizes) the issuance of a vendor license (i.e., a retail license) to wineries that are "licensed and engaged in the manufacture of wine in this state."[4] Fla. Stat. § 561.221(1)(a) (2021); *see also Bainbridge*, 311 F.3d at 1107 n.6. The practical implication of the foregoing statutory scheme was that Florida wineries could obtain a retail license that allowed them to sell and deliver their wine directly to consumers without going through a distributor and retailer, whereas out-of-state wineries could not similarly "bypass[] the intermediaries in the three-tier distribution system[.]" *Bainbridge*, 311 F.3d at 1107.

In 2005, the Supreme Court held that functionally identical statutory schemes in New York and Michigan violated the Commerce Clause because they "allow[ed] in-state wineries to sell wine directly to consumers in that State" but "prohibit[ed] out-of-state wineries from doing so[.]" *Granholm*, 544 U.S. at 466. On the basis of that decision, the State consented to the declaratory judgment identified above. *See* Doc. 189-2 at 1 (reciting in proposed consent order that

---

[4] The Division is responsible for administering and enforcing the statutes that comprise Florida's Beverage Law. Fla. Stat. § 561.02 (2021).

10

"Plaintiffs have alleged, and Defendant concedes, that [the Statutes] are unconstitutional under the authority of *Granholm* . . . to the extent that they discriminate against out-of-state wineries by prohibiting them from selling and delivering wine directly to customers in Florida when in-state wineries are not so prohibited.").

Although wineries were the subject matter of the foregoing judicial decisions, proposed declaratory judgment, and actual declaratory judgment, the parties and the District Court also used the word "vendors" in several places. As described in greater detail in Section II-D, *infra*, the parties stated in their proposed consent order that the Statutes did "what is forbidden by *Granholm*" because they applied "only to out-of-state vendors" and prohibited "out-of-state vendors from delivering wine directly to Florida residents[.]" Doc. 189-2 at 2. In their motion for entry of judgment, Plaintiffs described the accompanying proposed consent judgment as one that would declare the Statutes unconstitutional for "prohibiting out-of-state wine vendors from selling and delivering their products directly to Florida residents."[5] Doc. 188 at 2. And the District Court, for its part, inserted the phrase "against out-of-state vendors and producers" into the parties' proposed consent injunction when ostensibly defining its scope. Doc. 196 at 2. The ultimate

---

[5] As noted above, the actual proposed consent judgment that accompanied the motion (as well as the consent judgment that the District Court entered) referred to wineries rather than "vendors." Doc. 189-2 at 2.

question on appeal is whether the District Court's use of that phrase was intended to refer to out-of-state wineries only or to all out-of-state wine retailers.

The District Court appears to have added the phrase in question because the parties' proposed consent injunction read simply as follows: "IT IS FURTHER ORDERED that Defendant is ENJOINED from enforcing Florida Statutes §§ 561.54 and 561.545." Doc. 189-2 at 2. In their motion for entry of the proposed order, however, Plaintiffs described the parties' proposed injunction as one that would enjoin the State "from enforcing Floroda's [sic] statutory scheme that prohibits out-of-state *wineries* from selling and delivering wine directly to adult Florida residents . . . ." Doc. 188 at 2 (emphasis added). And shortly after the injunction issued, the Florida Senate Committee on Regulated Industries issued a report in which it advised the Florida Senate that it had consulted with the Division and that the Division was interpreting "the vague and imprecise terms used in the *Bainbridge* final order" "as applicable only to out-of-state wine *manufacturers*" (emphasis added).[6]

Approximately 13 years later, in May 2018, Plaintiffs' counsel (on behalf of an out-of-state wine retailer that was not a party to this litigation) petitioned the Division for a declaratory statement. Doc. 206-1 at 1. The question posed in that

---

[6] FLA. SEN. COMM. ON REGUL. INDUS., REP. NO. 2006-146, DIRECT SHIPMENT OF WINE TO FLORIDA CONSUMERS 12–13 (2005), https://www.flsenate.gov/UserContent/Committees/Publications/InterimWorkProgram/2006/pdf/2006-146rilong.pdf.

petition was whether the Statutes prohibit out-of-state wine *retailers* from "deliver[ing] wine directly to consumers in the State of Florida." *Id.* Several Florida alcoholic-beverage industry groups intervened in the declaratory statement proceeding. Doc. 206-1 at 3, ¶ 6. The Division granted intervention and issued a declaratory statement on August 15, 2018. *Id.* at 2. The Division declared therein that it would "abide[] by the terms of" the injunction in this case, which it described as prohibiting enforcement of the Statutes "against out-of-state manufacturers and vendors of wine[.]" *Id.* at 5, ¶ 13. In doing so, it interpreted the injunction to apply not only as to out-of-state wineries (i.e., manufacturers), but also as to out-of-state wine retailers. *Id.* at 5, ¶ 14. The intervenors appealed the declaratory statement to Florida's First District Court of Appeal, which affirmed per curiam without an opinion. *Wine & Spirits Distribs. of Fla., Inc. v. Arnold's Wines, Inc*., 275 So. 3d 555 (Fla. Dist. Ct. App. 2019) (unpublished table decision).

## STANDARDS OF REVIEW

The Court reviews de novo the "threshold question" of whether a consent injunction is ambiguous. *F.T.C. v. Leshin*, 618 F.3d 1221, 1231 (11th Cir. 2010) (citations omitted). *See also U.S. v. Bradley*, 484 F. App'x 368, 371 (11th Cir. 2012) ("[L]ike our *de novo* review of a district court's contract interpretation, we review *de novo* a district court's decisions about what a consent order means and about whether a consent order is ambiguous."). A district court's determination

whether Rule 60(a) or Rule 60(b) governs a motion is likewise reviewed de novo because it is a question of law. *Gulf Power Co. v. Coalsales II, LLC*, 522 F. App'x 699, 709 (11th Cir. 2013) (citation omitted). Moreover, although a ruling on a Rule 60(b) motion generally is subject to abuse-of-discretion review, a ruling on a Rule 60(b)(4) motion is reviewed de novo, as "the question of the validity of a judgment is a legal one" because the judgment is "by definition either [a] legal nullit[y] or not." *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir. 2001) (citations omitted).

Finally, to the extent that the District Court applied Rule 60(a), its ruling would be reviewed for abuse of discretion. *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 193 (5th Cir. 2011). However, a court abuses its discretion where it "applies an incorrect legal standard, . . . or if it reaches a conclusion that is clearly unreasonable or incorrect." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1226 (11th Cir. 2005). "An error of law constitutes an abuse of discretion." *Wexler v. Lepore*, 385 F.3d 1336, 1338 (11th Cir. 2004).

## <u>SUMMARY OF THE ARGUMENT</u>

"In the hierarchy of law, language is king. Words matter in constitutions, treaties, statutes, rules, cases, and contracts." *Pottinger v. City of Mia.*, 805 F.3d 1293, 1294 (11th Cir. 2015). Words matter in consent injunctions as well. *Id.*

The consent order in question includes a declaratory judgment and a permanent injunction. There is no dispute about the scope of the judgment itself: it

is a judgment only that the Statutes are unconstitutional as applied to wineries. Unlike the judgment, however, the injunction does not mention the word "wineries." Instead, it purports to prohibit the State from enforcing the Statutes against "out-of-state vendors and producers." The District Court added that phrase to the parties' proposed consent injunction at the time of issuance, and the jarringly inconsistent use of terminology leaves the injunction susceptible to multiple interpretations.

Read in isolation from the rest of the order and the parties' proposed order, the phrase can be read to refer both to wine retailers and to wineries. But read in the context of the entire order and the parties' proposed order, the phrase can only be understood to refer to vertically integrated wineries—not to wine retailers in general. The District Court ruled erroneously as a threshold matter that the injunction is unambiguous.

The District Court then compounded its error by denying clarification and declining to state definitively what the injunction actually means. All of the contemporaneous evidence in the record—the parties' proposed consent order, Plaintiffs' motion for entry of judgment, the docket entries reflecting the District Court's and the parties' thoughts on how *Granholm* impacted this case, the *Granholm* decision itself, and the non-injunctive portion of the District Court's order—demonstrates that the parties and the District Court used the word

15

"vendors" inartfully to refer to wineries. That is dispositive of the scope of the parties' agreement to resolve this litigation through a consent injunction, and of the District Court's intention when it added the phrase "vendors and producers" to the parties' proposed consent injunction.

The District Court also erred when it concluded that the State's request for clarification was governed by Rule 60(b)(1) of the Federal Rules of Civil Procedure, and not by Rule 60(a). The State did not argue that the District Court made a mistake by actually enjoining it from enforcing the Statutes against out-of-state wine retailers. Accordingly, Rule 60(b)(1) does not apply.

Instead, the State argued that the phrase in question is ambiguous, and that it does not clearly reflect the parties' and the District Court's intentions (at the time the injunction was drafted) to limit the scope of the injunction to out-of-state wineries. Rule 60(a) authorizes the clarification that the State seeks because it authorizes courts to correct "blunders in execution" that obfuscate the original meaning of an order, thereby ensuring that the order accurately reflects how the parties' rights were actually adjudicated. Here, there is (and can be) no dispute about how the parties' rights were actually adjudicated—the Statutes were declared unconstitutional only as applied to wineries. The clarification that the State sought would confirm that the scope of the injunction is consistent not only with the parties' and the District Court's contemporaneous intentions, but with the

undisputed scope of the declaratory judgment itself. It therefore would not affect Plaintiffs' substantial rights.

The State is also entitled to clarification regardless of Rule 60(a). It is axiomatic that the appropriate course of action for an enjoined party in doubt about the scope of the injunction is to seek guidance from the issuing court rather than act unilaterally at its peril. The State has opted for the former course of action here, and it is entitled to a definitive judicial construction of the injunction. The need for clarification is highlighted by the fact that the State itself has reached conflicting conclusions about the scope of the injunction over the years. It understood the injunction to be limited to wineries when the injunction issued, but 13 years later a different administration issued a declaratory statement in which it reached the opposite conclusion—one that does not accurately reflect the State's original or current understanding of the scope of the injunction. The State is entitled to enforce its laws in a manner that was neither adjudicated nor conceded to be unconstitutional, and clarification is necessary so that it may do so without risking the prospect of a contempt proceeding.

Finally, the District Court purportedly issued the injunction with the State's consent and at the parties' joint request. It was therefore bound by the scope of the parties' agreement, which was reflected in the proposed consent order. To the extent that the District Court actually enjoined the State from enforcing the

17

Statutes against all out-of-state retailers, it would have issued a consent injunction that exceeded the scope of the parties' consent—something it is powerless to do. It follows that such an injunction would be void, and that the State would be entitled to relief under Rule 60(b)(4).

## ARGUMENT

## I.   THE INJUNCTION IS AMBIGUOUS, AND THE DISTRICT COURT ERRED IN CONCLUDING OTHERWISE.

The fundamental question that the State asked the District Court in its motion to clarify is this: Does the District Court's use of the phrase "out-of-state vendors and producers" refer only to out-of-state wineries, or does it refer more broadly to out-of-state wineries and also to out-of-state wine retailers? The District Court left this question unanswered, apparently based on its conclusion that "clarification is unnecessary" because the injunction is unambiguous. Doc. 212 at 3, 5. This threshold conclusion constitutes the first of the District Court's errors.

"A contract is ambiguous where it is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract." *Leshin*, 618 F.3d at 1231. The same standard applies to the interpretation of a consent injunction because "a consent decree is a form of contract." *Id.* Here, the injunction undoubtedly is susceptible to two such interpretations, for the following two reasons.

18

A.    The District Court Employed Inconsistent Terminology.

The sentence preceding the injunction constitutes the actual judgment of the District Court, and it provides that the Statutes "violate the Commerce Clause *to the extent that* they discriminate against out-of-state *wineries* by prohibiting them from selling and delivering wine directly to customers in Florida when in-state wineries are not so prohibited." Doc. 196 at 2 (emphasis added). As the judgment demonstrates, it does not address the constitutionality of the Statutes except as applied to out-of-state wineries. The State does not quarrel with this judgment because it is, verbatim, the judgment to which the State consented. *Compare* Doc. 189-2 at 2. The problem arises in the following sentence, in which the District Court granted injunctive relief.

Rather than ordering that the State was enjoined from enforcing the Statutes against "out-of-state wineries" in light of the foregoing judgment, the District Court instead ordered that the State was enjoined from enforcing the Statutes against "out-of-state vendors and producers." Doc. 196 at 2. That phrase is susceptible to an interpretation that it means simply "out-of-state wineries" because out-of-state wineries were the exclusive subject matter of the judgment on which the injunction was premised.[7] But it is *also* susceptible to an interpretation

---

[7] It is also susceptible to that interpretation because the District Court presumably did not intend an injunction that would exceed the scope of the consent judgment. *See* Section IV, *infra*.

that it means something different simply because the District Court used that phrase instead of the phrase "out-of-state wineries." The District Court's inconsistent use of terminology itself renders the injunction internally inconsistent and ambiguous.

B.      The Word "Vendors" Can Refer to Retailers or to Vertically Integrated Wineries that Sell Their Own Wine at Retail.

At the outset of its 2002 opinion vacating a summary judgment on the basis of an incomplete factual record, this Court described the three-tier distribution system as one that consists of "manufacturer, distributor, and vendor." *Bainbridge*, 311 F.3d at 1106. It then explained that the "vendor" category could consist of "a typical retailer <u>or</u> a vertically integrated winery/retailer." *Id.* (emphasis added). In other words, this Court recognized that the word "vendor" can refer to entirely different types of entities: a typical wine retailer (for example, a wine shop or a supermarket) <u>or</u> a wine manufacturer that produces and then sells its wine directly to consumers.

In opposing the State's motion, Plaintiffs made no attempt to refute the State's detailed discussion of why the injunction is ambiguous. Neither did the District Court when it denied the State's motion, instead characterizing the State's discussion dismissively as a "strained contention of ambiguity" without actually explaining what the phrase "vendors and producers" means. Doc. 212 at 5. But there is nothing "strained" about the phrase's susceptibility to multiple

20

interpretations—particularly where this Court has already recognized that the word "vendor" itself is subject to multiple interpretations.

As the State explained in its motion, the word "vendor" refers to a retailer under Florida's Beverage Law. *See* Fla. Stat. § 561.14(3) (2021) (describing a vendor license as a license "to sell alcoholic beverages at retail only"). Thus, one (literal) reading of the phrase "vendors and producers" is that it applies both to wine retailers and to wine producers (i.e., wineries). Another reading of the phrase—one that reads the phrase in the context of the entire consent order and the parties' agreement (which was memorialized in their proposed consent order)—is that it refers only to wineries that sell the wine they produce at retail. As explained in Section II, *infra*, the State contends that the latter interpretation is the correct one. As a threshold matter, however, the District Court erred in concluding that the injunction is unambiguous and that clarification is unwarranted.

## II.    THE INJUNCTION IS PROPERLY CONSTRUED AS LIMITED TO WINERIES.

"Since a consent decree or order is to be construed for enforcement purposes basically as a contract, reliance upon certain aids to construction is proper, as with any other contract." *U.S. v. ITT Continental Baking Co.*, 420 U.S. 223, 238 (1975). "Such aids include the circumstances surrounding the formation of the consent order . . . [.]" *Id.* The proposed consent order that the parties submitted to the District Court, together with the accompanying motion for entry of the consent

21

order, leaves no doubt that the parties agreed to an injunction that applies to wineries only—and not to retailers in general.

> A.     The Judgment Itself is Limited to Wineries.

Notwithstanding the parties' imprecise use of terminology elsewhere in the proposed order, the actual judgment on which the parties agreed was clear and remains undisputed: the parties requested judgment that the Statutes "violate the Commerce Clause *to the extent* that they discriminate against out-of-state *wineries* by prohibiting them from selling and delivering wine directly to customers in Florida when in-state *wineries* are not so prohibited." Doc. 189-2 at 2 (emphasis added). The District Court adopted that language verbatim as the judgment on which the injunction was based. *See* Doc. 196 at 2. Thus, the parties agreed only—and the District Court adjudged only—that the Statutes are unconstitutional *as applied to out-of-state wineries*.

Given the limited scope of the adjudication, it is doubtful that the District Court would have proceeded to enjoin the enforcement of the Statutes not only against out-of-state wineries but also against all out-of-state wine retailers. Thus, when the District Court concluded by enjoining the State "from enforcing [the Statutes] against out-of-state vendors and producers" of wine, it must have intended for "vendors and producers" to mean *wineries* that also act as vendors by selling their own wine at retail—i.e., the "vertically integrated winery/retailer" that

22

this Court spoke of in its 2002 decision. *Bainbridge*, 311 F.3d at 1106. Simply put, the District Court appears to have used the phrase "vendors and producers" to refer to vertically integrated wineries. Otherwise, it would have senselessly issued an injunction that exceeded the scope of its declaratory judgment.

B.    The Parties' Interchangeable Use of the Terms "Wineries" and "Vendors" Demonstrates that the Injunction is Limited to Wineries.

The parties' proposed consent order demonstrates that they likewise used the term "vendors" to refer to vertically integrated wineries—and not to retailers generally. In their proposed order, the parties drew a distinction between "vendors" (as they were using the term) and retailers when discussing why they were consenting to an injunction in light of the *Granholm* decision. Specifically, the parties asserted that the Statutes "do what is forbidden by *Granholm*"[8] because "they apply only to out-of-state *vendors*" and require wine from such "vendors" "to pass through a wholesaler and *retailer*." Doc. 189-2 at 2 (emphasis added).

As a preliminary matter, the parties' use of the words "vendors" and "retailer" in this manner within the same sentence demonstrates that they were distinguishing between different types of entities. More fundamentally, though, if the parties were using the word "vendors" in its ordinary sense (i.e., to mean "retailers"), then they would have been asserting that out-of-state *retailers* were

---

[8] As explained in Section II-D, *infra*, the parties' brief discussion of *Granholm* in their proposed consent order likewise demonstrates that they agreed to and intended an injunction that would apply to wineries only.

being required to sell their wine through wholesalers and retailers. This would have been a blatant misstatement of the nature of the three-tier distribution system. As this Court has recognized (and as the parties knew), the three-tier distribution system consists of "manufacturer, distributor, and vendor[.]" *Bainbridge*, 311 F.3d at 1106. *Manufacturers* sell to distributors (i.e., wholesalers); retailers do not. Fla. Stat. § 561.14(1)–(3) (2021). The parties plainly did not mean to suggest that the Statutes were unconstitutional because they required *retailers* to sell their wine through a distributor and a retailer. Instead, they could only have meant that the Statutes were unconstitutional because they required out-of-state *wineries* (i.e., manufacturers) to sell their wine through distributors and retailers while exempting in-state wineries from that requirement.[9] It follows necessarily that the parties used the word "vendors" to refer to wineries—and *not* to retailers generally.

> C.    Plaintiffs' Motion for Entry of Judgment Demonstrates that the Injunction is Limited to Wineries.

Plaintiffs submitted the proposed consent order contemporaneously with a motion for entry of judgment. Doc. 188. In their motion, Plaintiffs explained that the parties "conferred and agree on the wording" of the proposed consent order. They proceeded to describe the accompanying proposed order within their motion

---

[9] *Compare Granholm*, 544 U.S. at 466 (invalidating statutes that had the "object and effect" of "allow[ing] in-state wineries to sell wine directly to consumers in that State" while "prohibit[ing] out-of-state wineries from doing so").

itself. Their description demonstrates conclusively that Plaintiffs used the words "vendors" to refer to "wineries."

In their motion for entry of judgment, Plaintiffs described the accompanying proposed order as one that would declare that the Statutes "violate the Commerce Clause by prohibiting out-of-state wine *vendors* from selling and delivering their products directly to Florida residents." Doc. 188 at 2 (emphasis added). But remarkably, in the accompanying proposed order itself (which comprised the parties' actual agreement), the parties instead requested judgment that the Statutes "violate the Commerce Clause to the extent that they discriminate against out-of-state *wineries* by prohibiting them from selling and delivering wine directly to customers in Florida when in-state wineries are not so prohibited." Doc. 189-2 at 2 (emphasis added). The only plausible way to reconcile the foregoing inconsistency is to conclude that Plaintiffs themselves were using the word "vendors" to mean "wineries."

> D.    The Parties' and the District Court's Discussion of the *Granholm* Decision Demonstrates that the Injunction is Limited to Wineries.

The parties agreed to the injunction on the basis of the Supreme Court's *Granholm* decision, which they described as addressing statutes that "appl[ied] only to out-of-state vendors." Doc. 189-2 at 2. But as the parties presumably

knew[10] (and as the District Court surely knew when modifying the parties' proposed order), *Granholm* addressed only *wineries* that sought to deliver their wine directly to consumers—not wine retailers generally. *See Granholm*, 544 U.S. at 465 ("These consolidated cases present challenges to state laws regulating the sale of wine from out-of-state wineries to consumers in Michigan and New York."). Importantly, if the parties were using the term "vendors" to mean "retailers" rather than "wineries" (as Plaintiffs apparently contend now), then they would have flagrantly mischaracterized the *Granholm* case because *Granholm* did not involve retailers.

Thus, when the parties asserted that the Statutes "do what is forbidden by *Granholm*" by preventing out-of-state "vendors" from delivering wine to Florida consumers, they must have been using the term "vendors" to refer to "wineries" (or "vertically integrated winery/retailers"). The District Court apparently picked up on this when it modified the parties' proposed order to state that the Statutes did "precisely what was determined to be unconstitutional in *Granholm*" by prohibiting "out-of-state vendors *and producers* from delivering wine directly to Florida residents whereas in-state *producers* are not so prohibited." Doc. 196 at 2 (emphasis added).

---

[10] Plaintiffs' counsel were among the counsel of record in the *Granholm* case.

It appears that the District Court's intended purpose in adding the words "and producers" was to correct the parties' description of *Granholm* by noting that *Granholm* involved only wine producers (i.e., wineries). Notwithstanding the survival of the word "vendors" from the parties' draft order, this demonstrates the District Court's understanding that *Granholm* involved wineries rather than retailers. It follows that the District Court intended to refer only to wineries that sell their own wine to consumers when it employed the phrase "vendors and producers."

Indeed, at the end of its analysis of *Granholm*, the District Court concluded that "Florida's statutory scheme thereby discriminates against out-of-state wine *producers* to the advantage of in-state wine *producers* in violation of the Commerce Clause and is therefore unconstitutional under *Granholm*." *Id.* (emphasis added). In other words, the District Court clearly recognized that the unconstitutional discrimination, here and in *Granholm*, was against out-of-state *wineries* rather than *retailers*. Thus, notwithstanding that the District Court maintained the parties' use of the word "vendors," it must have intended to refer only to vertically integrated wineries when it added the phrase "vendors and producers" to the parties' draft consent injunction.

27

E.    The Parties' and the District Court's Efforts to Limit the Scope of the Injunction Demonstrate that the Injunction is Limited to Wineries.

In issuing the injunction, the District Court adopted the parties' proposed language that the order was limited to wine because that was "[t]he only beverage at issue" in the case. *See* Doc. 189-2 at 2, 196 at 2. This demonstrates the parties' (and the District Court's) intent to limit the scope of the consent injunction to what was actually at issue in this case, and retailers were not at issue in this case. *See Bainbridge*, 311 F.3d at 1106 (describing the issue in this case as "whether the State of Florida may prohibit out-of-state wineries from shipping their products directly to Florida consumers while permitting in-state wineries to do so" and identifying the discriminatory treatment as an exception to the "vertical quarantine" that benefited in-state wineries but not out-of-state wineries). It is implausible that the parties and the District Court would take care to explicitly exclude from the injunction those types of beverages not at issue in this case while *including* in the injunction an entire tier of the distribution system that was not at issue in this case. The District Court's modification of the proposed consent injunction surely was not intended for that purpose.

Notably, in response to the State's motion for clarification, Plaintiffs and the District Court both completely sidestepped the issues of how the injunction should be interpreted and whether the District Court actually intended the injunction to extend to retailers. Plaintiffs, for their part, argued merely that the State's

description of the parties' mutual intent "reflect[ed] [the State's] side of a heavily disputed case, but [the State] does not speak for the Plaintiffs." Doc. 207 at 4. One would have expected that Plaintiffs would then speak for themselves by attempting to refute the State's description and presenting their own explanation of what the parties' proposed consent injunction meant, but they did not.

The District Court likewise avoided the issue. It simply concluded without elaboration that "considering the operative pleadings, the holding in *Granholm*, the agreed order, and the necessity of correcting the omission in the parties' proposed order, . . . the injunction accurately reflects the intent of the parties and this Court." *Id.* at 5. But that is no answer at all—it merely begs the very question on which the State based its entire motion. The District Court did not actually state (or even suggest) what it intended, or what it believes the parties intended when they submitted the proposed consent order.

## III. THE DISTRICT COURT ERRED BY MISCONSTRUING THE STATE'S MOTION AS ONE GOVERNED BY RULE 60(b)(1) RATHER THAN RULE 60(a) AND BY DENYING CLARIFICATION.

In its motion for clarification, the State asked the District Court to clarify that the latter's introduction of the phrase "vendors and producers" was intended to refer only to wineries. In other words, the State asked the District Court to clarify the original intent and meaning of the injunction at the time of its issuance. *See*, *e.g.*, Doc. 206 at 16 ("Rule 60(a) authorizes this Court to clarify that its use of the

29

phrase "vendors and producers" was intended to refer only to wineries, as the parties had agreed."). The State did *not* assert that the District Court mistakenly *did* enjoin the State from enforcing the Statutes against all out-of-state retailers. Thus, the District Court erred by concluding that Rule 60(b)(1) governed the State's motion.

A.    Rule 60(a) Governs the State's Request for Clarification.

Rule 60(a) authorizes a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment" "for the purpose of reflecting what was intended at the time of the original . . . order[.]" *Fed. Home Loan Mortg. Corp. v. Matassino*, 517 F. App'x 687, 688 (11th Cir. 2013) (citing Fed. R. Civ. P. 60(a)). *See also Shuffle Tech Int'l, LLC v. Wolff Gaming, Inc.*, 757 F.3d 708, 711 (7th Cir. 2014) (Rule 60(a) "authorizes corrections necessary to restore the original meaning of the judgment[.]"). The State asked the District Court to do nothing more. Nonetheless, the District Court ruled that the State's motion was actually a mislabeled Rule 60(b)(1) motion[11] and therefore denied clarification under Rule 60(a). The District Court erred in doing so.

---

[11] Rule 60(b)(1) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" on the basis of "mistake, inadvertence, surprise, or excusable neglect."

Rule 60(a) and Rule 60(b)(1) govern entirely different types of errors. Courts have explained the distinction as follows:

> The basic distinction between "clerical mistakes" and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of "blunders in execution" whereas the latter consist of instances where the court changes its mind, either because it made a legal or factual mistake in making its original determination, or because on second thought it has decided to exercise its discretion in a manner different from the way it was exercised in the original determination.

*Blanton v. Anzalone*, 813 F.2d 1574, 1577 (9th Cir. 1987) (citing *U.S. v. Griffin*, 782 F.2d 1393, 1397 (7th Cir. 1986)). *See also Weeks v. Jones*, 100 F.3d 124, 128–29 (11th Cir. 1996) (Rule 60(a) authorizes corrections that reflect what was intended at the time of ruling, rather than to correct errors of substantive judgment) (citing cases); *Griffin*, 782 F.2d at 1396–97 ("If the flaw lies in the translation of the original meaning to the judgment, then Rule 60(a) allows a correction; if the judgment captures the original meaning but is infected by error, then the parties must seek another source of authority to correct the mistake.").

The State's request for clarification clearly falls into the first category. The State does not contend that the District Court actually did (much less intended to) extend the scope of the consent injunction to retailers. It does not argue that the original meaning of the injunction extended to retailers. Instead, the State explained why the ambiguous language of the injunction must refer only (and must

have been *intended* to refer only) to wineries,[12] and then asked the District Court to confirm the State's interpretation by clarifying the injunction.[13] In other words, the State explained why the District Court must have intended for "vendors and producers" to mean "wineries" and explained that this intended ruling was obfuscated by the use of imprecise language such that clarification is necessary. *See Sartin v. McNair Law Firm PA*, 756 F.3d 259, 266 (4th Cir. 2014) (recognizing that the sort of "mistake" that Rule 60(a) governs "also includes an unintended ambiguity that obfuscates the court's original intent") (citing numerous cases). In sum, Rule 60(b)(1) is inapplicable because the State did not argue that the District Court actually did (much less intended to) enjoin enforcement of the Statutes as applied to wine retailers generally.[14]

---

[12] *See*, *e.g.*, Doc. 206 at 9 ("The State respectfully submits that the Court's and the parties' intent was clear at the time the injunction was agreed to and issued, even if the use of terminology was not. Specifically, the Court's and the parties' intent was to craft an injunction that prevented the State from enforcing its direct-shipment laws against out-of-state *wineries* only.")

[13] It might have been a different matter if the injunction provided explicitly that the State was enjoined from enforcing the Statutes even against out-of-state retailers. But it does no such thing. As the District Court noted, "[t]he word retailers cannot be found in the injunction." Doc. 212 at 5. The problem, of course, is that the word "vendors" does appear in the injunction.

[14] The State's second argument—that a district court lacks authority to issue a consent injunction that exceeds the scope of the parties' consent—was (and remains) contingent on a judicial determination that the injunction actually extends to retailers in the first place.

In erroneously re-characterizing the State's Rule 60(a) motion as a Rule 60(b)(1) motion, the District Court explained that the latter rule provides the remedy for a judge's "mistakes of fact as well as mistakes of law." Doc. 212 at 4 (quoting *Nisson v. Lundy*, 975 F.2d 802, 806 (11th Cir. 1992)). But the State did not argue that the District Court made a mistake of fact or a mistake of law. Instead, the State argued that the District Court intended for the scope of the injunction to be limited to wineries (and therefore coextensive with the declaratory judgment and with the parties' agreement), and that the District Court's intention was not clearly expressed in the language that it added to the proposed consent injunction. The use of imprecise, ambiguous language is neither a mistake of fact nor a mistake of law; it is a "blunder in execution." It follows that an enjoined party's request for clarification of such language does not fall within the scope of Rule 60(b)(1).

Instead, relief under Rule 60(a) is appropriate when "the judgment simply has not accurately reflected the way in which the rights and obligations of the parties have in fact been adjudicated." *Rivera*, 647 F.3d at 193 (citation omitted). *See also Vaughter v. Eastern Air Lines, Inc.*, 817 F.2d 685, 689 (11th Cir. 1987) (Rule 60(a) relief is available to correct "mistakes or oversights that cause the judgment to fail to reflect what was intended at the time of the trial.") (citation omitted).

A patently ambiguous injunction cannot be said to "accurately reflect" anything. More importantly, the District Court's actual *adjudication* is undisputed and unambiguous—it declared only that the Statutes are unconstitutional as applied to out-of-state wineries. Doc. 196 at 2. That adjudication obviously is dispositive of how "the rights and obligations of the parties have in fact been adjudicated." The problem is that the injunction that follows that adjudication is ambiguous and therefore does *not* accurately reflect how "the rights and obligations of the parties have in fact been adjudicated." The solution is found in Rule 60(a).

In analyzing the State's motion under Rule 60(b)(1) rather than Rule 60(a), the District Court construed Rule 60(a) relief as confined to "typographical and computational errors" or to "mechanical or mathematical mistakes." DE 212 at 4. But "Rule 60(a) is not confined just to fixing typographical and other clerical errors" and can be used to provide relief "when there is an inconsistency between the text of an order or judgment and the district court's intent when it entered the order or judgment." *Sartin*, 756 F.3d at 265–66. *See also Agro Dutch Indus. Ltd. v. U.S.*, 589 F.3d 1187, 1192 (Fed. Cir. 2009) (Under Rule 60(a), "[t]he trial court's discretion is not limited to the correction of clerical or typographical errors but encompasses the correction of errors needed to comport the order with the original understandings and intent of the court and the parties."). It is undisputed that the District Court (upon the parties' agreement and request) actually adjudicated the

Statutes to be unconstitutional only as applied to out-of-state wineries. Therefore, at the time it added the phrase "out-of-state vendors and producers" to the parties' proposed consent injunction, the District Court must have intended for that phrase to mean "out-of-state wineries." *See also Rhodes v. Hartford Fire Ins. Co.*, 548 F. App'x 857, 860 (4th Cir. 2013) ("The district court's intent may be ascertained through consideration of contemporaneous documents[.]").

This Court's *Vaughter* decision demonstrates the point. In *Vaughter*, the district court initially entered a judgment that defined a class "in a manner inconsistent with the prior proceedings in the case." 817 F.2d at 689. Reasoning that nothing in the record "suggest[ed] that either the parties or the court ever contemplated a class" under the Rule 23 provisions cited in the initial judgment, this Court upheld the use of Rule 60(a) to modify the judgment by amending the definition of the class. *Id.* at 689–90. It did so because the district court's "amendment served simply to reflect what was intended in the original summary judgment order." *Id.* at 689.

As in *Vaughter*, "substantial evidence" in the record (recited above) "demonstrat[es] the clear and consistent intention by all concerned[.]" *Id.* at 690–91. Specifically, it demonstrates that "the parties and the court operated under the belief" that the scope of the injunction would be limited to wineries. *Id.* at 690. Plaintiffs represented to the District Court that the proposed consent injunction

would enjoin the State "from enforcing Floroda's [sic] statutory scheme that prohibits out-of-state *wineries* from selling and delivering wine directly to adult Florida residents . . . ." Doc. 188 at 2 (emphasis added). And of course, as explained in detail in Section II, *supra*, all of the contemporaneous evidence of the circumstances surrounding the issuance of the injunction confirms that limited scope. Accordingly, Rule 60(a) authorizes the clarification that the State seeks.

Moreover, the scope of Rule 60(a) is not confined to "minor" miscues or ambiguities. "The Rule applies to all clerical miscues, trivial and important alike." *Griffin*, 782 F.2d at 1397. Thus, "blunders in execution" are correctable under Rule 60(a) even when they "unsettle expectations," as "many alterations of judgments under Rule 60(a) have significant effects." *Id.*

Relatedly, although "[e]rrors that affect substantial rights of the parties . . . are beyond the scope of rule 60(a)[,]" *Mullins v. Nickel Plate Mining Co.*, 691 F.2d 971, 973 (11th Cir. 1982), the clarification sought does not affect Plaintiffs' rights. Plaintiffs merely beg the question when they argue that clarification would affect their substantial rights should it confirm that the injunction is narrower than they now wish it to be. The threshold question is whether they obtained such rights in the first place—i.e., whether they actually obtained an injunction that would prohibit enforcement of the Statutes against out-of-state wine retailers in general. As demonstrated *supra*, they did not. It follows necessarily that they have no

36

"substantial right" to prevent the State from enforcing the Statutes against retailers, and that an order clarifying the injunction accordingly cannot affect this nonexistent right. Moreover, although courts have recognized that "[a]n amendment to a judgment affects the substantive rights of the parties if it expands the scope or modifies the content of the court's adjudication[,]" *Rivera*, 647 F.3d at 199, the requested clarification of the injunction would *align* it with, rather than modify, the content of the District Court's actual adjudication.

Ultimately, "[a] judge may invoke Rule 60(a) in order to make a judgment reflect the actual intentions of the court, plus the necessary implications." *Blanton*, 813 F.2d at 1577. It is a necessary implication of the parties' use of the word "vendors" and of the limited scope of the declaratory judgment (which addresses out-of-state wineries only) that the corresponding injunction was intended to be limited to wineries.

### B.    The State is Entitled to Clarification Regardless of Rule 60(a).

The Supreme Court has long recognized that where an enjoined party has doubts about the scope of an injunction, it "may petition the court granting it for a modification or construction of the order." *Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 15 (1945). The Court continued as follows:

> While such relief would be in the sound discretion of the court, we think courts would not be apt to withhold a clarification in the light of a concrete situation that left parties or 'successors and assigns' in the dark as to their duty toward the court. Enforcement orders are issued .

37

.. not for the entrapment of parties, and courts no less than parties desire to avoid unwitting contempts as well as to punish deliberate ones.

*Id. See also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192–93 (1949) (recognizing that an enjoined party in doubt regarding the scope of an injunction should "petition[] the District Court for a modification, clarification or construction of the order" rather than "act[] at [its] peril" by making its "own determination of what the decree meant"); *cf. Cook v. Birmingham News*, 618 F.2d 1149, 1152 (5th Cir. 1980) (suggesting that Rule 60 provides exclusive means for seeking clarification).

The State explained in detail in its submissions to the District Court why the language of the injunction is unclear. Rather than make its own determination and act at its peril, the State asked the District Court to clarify that the injunction does not extend to retailers in general. It acknowledged that the Division issued a declaratory statement in 2018 (years after the injunction issued) in which it opined that the scope of the injunction extends to retailers. But nothing in the record suggests that the Division interpreted the injunction in that manner previously.

To the contrary, the Florida Senate Committee on Regulated Industries issued a report shortly after the injunction issued and advised the Florida Senate that the Division was interpreting "the vague and imprecise terms used in the *Bainbridge* final order" "as applicable only to out-of-state wine *manufacturers*"

38

(emphasis added).[15] In other words, the administration that was in place at the time the injunction issued understood the injunction to be limited to wineries. The fact that the Division—under a different administration—apparently reached the opposite conclusion years later merely underscores the State's uncertainty and the need for clarification.

Courts have recognized that "there are important differences between a consent decree involving a one-time adjudication among private parties and one that includes an injunction restricting the ability of a State or local government to meet its responsibilities." *O'Sullivan v. City of Chi.*, 396 F.3d 843, 865 (7th Cir. 2005) (citing cases). With regard to the latter, "democracy does not permit public officials to bind the polity forever." *Evans v. City of Chi.*, 10 F.3d 474, 478 (7th Cir. 1993). "Consent alone is insufficient to support a commitment by a public official that ties the hands of his successor." *Id.* As explained above, the State did not consent in the first place to an injunction that would extend to non-winery retailers, and the parties did not agree to one. To the extent that the Division reversed its prior interpretation of the injunction in 2018, that interpretation cannot bind the State in perpetuity either. In the absence of clarification, however, it will effectively do so because the State is likely to be confronted with its declaratory

---

[15] FLA. SEN. COMM. ON REGUL. INDUS., REP. NO. 2006-146, DIRECT SHIPMENT OF WINE TO FLORIDA CONSUMERS 12–13 (2005), https://www.flsenate.gov/UserContent/Committees/Publications/InterimWorkProgram/2006/pdf/2006-146rilong.pdf.

statement and potentially even exposed to contempt proceedings should it now resume enforcement of the Statutes against out-of-state retailers.

In light of the declaratory statement, the State now faces the following Hobson's choice. It can revert to its original (and as demonstrated *supra*, correct) interpretation that the injunction is limited to wineries, disregard its declaratory statement, and act at its peril by gambling that it will not have to defend its interpretation in the context of a contempt proceeding. Alternatively, it can continue to forego enforcement of the Statutes against all out-of-state retailers—despite the fact that the District Court never adjudicated that such enforcement is unconstitutional—in order to avoid the prospect of an order to show cause. The State will obviously be forced to choose the latter course of action in the absence of clarification.

To be sure, the State's concerns are not manufactured—Plaintiffs' opposition to the State's requested clarification and their apparent insistence that the injunction does extend to retailers demonstrate that the State's concerns are real. So too does the District Court's erroneous conclusion that the injunction is unambiguous—a conclusion unfortunately unaccompanied by any indication of what it actually means.

Rule 65(d) of the Federal Rules of Civil Procedure is designed precisely to protect an enjoined party from this dilemma. It requires that "[e]very order

40

granting an injunction" must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required." "Rule 65(d) means that the parties need not guess their obligations at peril of contempt sanctions, and it also means that [the appellate] court should not have to guess what the district court has done." *Hispanics United of DuPage Cnty. v. Vill. of Addison*, 248 F.3d 617, 620 (7th Cir. 2001). Yet this is the quandary in which the State finds itself.

Moreover, the fact that the parties' draft consent injunction employed ambiguous and imprecise terminology did not obviate the District Court's independent obligation to review the proposed consent injunction and ensure that it complied with Rule 65(d)'s specificity requirement. Rule 65(d) applies to "*[e]very* order granting an injunction"—even consent orders. Fed. R. Civ. P. 65(d) (emphasis added). Indeed, district courts often reject proposed consent injunctions for failure to comply with Rule 65(d). *See*, *e.g.*, *S.E.C. v. Farha*, No. 8:12-cv-47-T-23MAP, 2018 WL 11354497, at *3 (M.D. Fla. May 1, 2018); *Mulhern v. ADT Sec. Svcs., LLC*, No. 2:18-CV-229-TLS, 2019 WL 6307233, at *2 (N.D. Ind. Nov. 25, 2019). Even a consent injunction requires "careful scrutiny" by the issuing court and is not entitled to "perfunctory approval" merely by virtue of the parties' agreement. *Stovall v. City of Cocoa*, 117 F.3d 1238, 1242 (11th Cir. 1997) (citing *U.S. v. City of Mia.*, 664 F.2d 435, 440–41 (5th Cir. 1981) (en banc)).

41

Ultimately, an order that grants an injunction but fails to comply with Rule 65(d) "cannot stand." *Int'l Longshoremen's Ass'n, Local 1291 v. Phila. Marine Trade Ass'n*, 389 U.S. 64, 76 (1967). "Because of the rightly serious view courts have traditionally taken of violations of injunctive orders, and because of the severity of punishment which may be imposed for such violation, such orders must in compliance with Rule 65 be specific and reasonably detailed." *Pasadena City Bd. of Ed. v. Spangler*, 427 U.S. 424, 438 (1976). As the Supreme Court has explained further:

> There is necessarily a counterpart to this well-established insistence that those who are subject to the commands of an injunctive order must obey those commands, notwithstanding eminently reasonable and proper objections to the order, until it is modified or reversed. That counterpart is that when such persons heed this well-established rule and prosecute their remedy first by a motion to modify in the issui[ng] court and then, failing there, by appeal of that court's denial of their motion, they are entitled in a proper case to obtain a definitive disposition of their objections.

*Id.* at 439–40. The State is entitled to a definitive judicial construction of the injunction so that it need not refrain from enforcing its laws in a manner neither conceded nor adjudicated to be unconstitutional.

## IV. IF THE DISTRICT COURT EXPANDED THE CONSENT INJUNCTION TO INCLUDE RETAILERS, THE INJUNCTION IS VOID BECAUSE A COURT LACKS THE POWER TO ISSUE A CONSENT INJUNCTION THAT EXCEEDS THE SCOPE OF THE PARTIES' CONSENT.[16]

In its motion for clarification, the State argued in the alternative that the injunction would be void if the District Court concluded that it had actually extended the parties' proposed consent injunction to retailers.[17] *See* Fed. R. Civ. P. 60(b)(4) (authorizing relief from final judgment on the basis that "the judgment is void"). "A judgment . . . is void for Rule 60(b)(4) purposes if the rendering court was powerless to enter it." *Burke*, 252 F.3d at 1263.

The District Court acknowledged—indeed, it emphasized—in its order denying the State's motion that "this was an *agreed* injunction entered on an *agreed* motion."[18] Doc. 212 at 3. It follows that the District Court lacked authority to enjoin the State's enforcement of the Statutes except to the extent that the State (and the parties collectively) expressly agreed. *See*, *e.g.*, *Reynolds v. Roberts*, 251

---

[16] The State acknowledges that appellate review of this issue may be complicated by the fact that the District Court appears not to have actually interpreted the injunction at all. The State nonetheless presents argument in order to preserve the issue.

[17] The District Court misconstrued this as an argument that the injunction would be void if it applies to "out-of-state wineries and retailers." Doc. 212 at 5.

[18] In emphasizing that point, the District Court apparently overlooked one of the central points of the State's motion: that the ambiguous phrase at issue came from the District Court rather than the parties.

F.3d 1350, 1357 (11th Cir. 2001) ("Lacking the consent of all of the parties, the court obviously lacked the power to enter a decree purportedly based on consent, for 'it is the parties' agreement that serves as the source of the court's authority to enter any judgment at all.'") (quoting *Local No. 93 v. City of Cleveland*, 478 U.S. 501, 522 (1986)). The governing principle is that a court is powerless to enter a *consent* order in which the relief granted "is broader than the relief to which the parties had actually consented." *Haagen-Dazs Co. v. Marina Ice Cream Co.*, 935 F.2d 542, 543 (2d Cir. 1991) (vacating consent judgment that did not reflect terms of parties' agreement).

As in *Reynolds*, the District Court "acted *sua sponte* in entering the challenged [phrase] in its order and injunction" "[b]ecause the plaintiffs did not move the court for entry of this challenged [phrase.]" *Reynolds*, 251 F.3d at 1358. Thus, if the District Court actually meant something other than "wineries" when it added the phrase "vendors and producers" to the proposed consent injunction, it "obviously lacked the power" to do so. *Id.* at 1357.

In denying relief under Rule 60(b)(4), the District Court explained that "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard." Doc. 212 at 5 (quoting *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010)). However,

even in its *Espinosa* decision, the Supreme Court "has not definitively interpreted" Rule 60(b)(4). *Brumfield v. La. State Bd. of Educ.*, 806 F.3d 289, 301 (5th Cir. 2015) (citing *Espinosa*, 559 U.S. at 270). Instead, the Supreme Court explained that "[a] void judgment is a legal nullity" and that it is a judgment "so affected by a fundamental infirmity that the infirmity may be raised even after the judgment becomes final." *Espinosa*, 559 U.S. at 270.

If the District Court actually did extend the scope of the consent injunction to retailers in contravention of the parties' agreement, then it did more than commit legal error—it did something that it "obviously lacked the power" to do. *Reynolds*, 251 F.3d at 1357. Although "[t]he list of such infirmities" authorizing Rule 60(b)(4) relief "is exceedingly short[,]" a judgment of this nature surely is "so affected by a fundamental infirmity." *Espinosa*, 559 U.S. at 270.

## CONCLUSION

Plaintiffs were previously "unwittingly saved[] by their vague complaint" when this Court questioned their standing in 2002. *Bainbridge*, 311 F.3d at 1107 n.8. Absent clarification, vague draftsmanship will once again inure to their benefit. But this time, it will have the effect of giving Plaintiffs far more than they bargained for while effectively rendering the Statutes unenforceable as applied to all out-of-state wine retailers—even though the parties did not agree to such a judgment and the District Court did not enter one. The State will be compelled to

continue to exercise caution by interpreting the injunction more broadly than it was intended, thereby foregoing enforcement of the Statutes even in applications neither agreed nor adjudicated to be unconstitutional. Statutes are not to be permanently rendered unenforceable due to a poorly drafted phrase in an injunction and a state agency's concomitant confusion and caution in construing that injunction. The State therefore asks this Court to reverse the order on appeal and to confirm that the injunction is properly construed as being limited to out-of-state wineries. At minimum, this Court should reverse and remand to the District Court with instructions to clarify the scope of the injunction.

Respectfully submitted,

/s/ David Axelman
David Axelman
Florida Bar #90872
General Counsel
**Florida Department of Business
and Professional Regulation**
2601 Blair Stone Road
Tallahassee, Florida 32399
David.Axelman@myfloridalicense.com
(850) 717-1241
*Counsel for Defendant-Appellant*

46

## <u>CERTIFICATE OF COMPLIANCE</u>

1. This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 10,934 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4.

2. This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*/s/ David Axelman*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed this brief electronically via the Court's electronic filing system on May 6, 2022, which will cause a notice of electronic filing to be sent to all counsel of record.

*/s/ David Axelman*