No. 22-10525

_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

JERRY BAINBRIDGE, et al.,

*Plaintiffs-Appellees*,

vs.

STERLING WHISENHUNT, in his official capacity as
Director of the Florida Division of Alcoholic Beverages and Tobacco,

*Defendant-Appellant*.

Appeal from a Final Judgment from the U.S. District Court
for the Middle District of Florida

Case No. 8:99-cv-2681-JDW-AEP

_____

## ANSWER BRIEF OF PLAINTIFFS - APPELLEES

Alexander B. Avtgis
Robert D. Epstein
James A. Tanford, *of counsel*
EPSTEIN SEIF PORTER & BEUTEL, LLP
50 S. Meridian St. Suite 505
Indianapolis, IN 46204
(317) 639-1326

*Attorneys for Appellees*

*Bainbridge v. Whisenhunt*
*Case No. 22-10525*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Eleventh Circuit Rules, Appellees submit the following complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that Appellees know or believe to have an interest in the outcome of this appeal:

Alexander B. Avtgis, Esq.

David Axelman

Jerry Bainbridge

Faye Bainbridge

Beer Industry of Florida, Inc.

Gene Bretoi

Chateau Thomas Winery, Inc.

Epstein Cohen Seif & Porter, LLP

Robert D. Epstein, Esq.

Florida Beer Wholesalers Association, Inc.

Florida Department of Business and Professional Regulation

James W. Guarnieri, Esq.

Independent Beverage Dealers, Inc.

*Bainbridge v. Whisenhunt*
*Case No. 22-10525*

Lake Ridge Winery & Vineyards

Betty E. Mullinix-Bretoi,

Sy Rabins

Theresa Rabins

San Sebastian Winery

James A. Tanford, Esq.

Sterling Whisenhunt

Hon. James D. Whittemore

Wine & Spirits Distributors of Florida, Inc.


No publicly traded company or corporation is known to Appellees to have an interest in the outcome of this appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs do not request oral argument as the case involves a routine denial of an untimely Rule 60 procedural motion.  If this Court does reach the merits, however, waiver should easily resolve all issues: Defendant had notice for more than sixteen years of the clear and precise language contained within the agreed-upon consent injunction.

## **TABLE OF CONTENTS**

Certificate of Interested Persons ..............................................................C-1

Statement Regarding Oral Argument ...........................................................i

Table of Contents ........................................................................... ii

Table of Citations.........................................................................iv

Statement of Jurisdiction.................................................................. viii

Statement of the Issues...................................................................1

Statement of the Case....................................................................2

Statement of Facts.......................................................................6

Standard of Review......................................................................17

Summary of Argument ..................................................................18

ARGUMENT ..........................................................................19

I.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING
DEFENDANT DABT'S RULE 60 MOTION ......................................19

    A. The 11th Circuit's Review of Rule 60 Motions Is For an Abuse Of
    Discretion .........................................................................19
    B. The Supreme Court's Recent Decision in *Kemp v. United States* Forecloses
    Defendant DABT's Rule 60(b)(1) Motion  ................................................21
    C. Rule 60(b)(4) Does Not Apply, Despite the DABT's Confusion Below and
    on Appeal ........................................................................28
    D. Additionally, Rule 60(a) Does Not Govern the DABT's Request .............33

II. THE INJUNCTION, WHICH APPLIES TO OUT-OF-STATE VENDORS,
HAS GONE UNCHALLENGED FOR SIXTEEN YEARS...................................38

A. Defendant DABT Waived Appeal by Continually Acquiescing to the Judgment and Injunction and Issuing a Written Administrative Opinion that the Injunction was Binding .......................................................................... 39

B. Judicial Estoppel Prohibits Defendant DABT from Taking the Opposite Position from That Taken in 2018 .................................................. 40

C. Equitable Estoppel Shields the Reliance Interests of Sellers and Shippers ...... 42

III. *TENNESSEE WINE* HELD THAT *GRANHOLM* APPLIES TO RETAILERS AS WELL AS PRODUCERS ...................................................................... 45

Conclusion ....................................................................................................... 46

Certificate of Service ...................................................................................... 47

Statutory Addendum ...................................................................................... A-1

# TABLE OF CITATIONS

## Cases

*Am. Bankers Ins. Co. of Fla. v. Nw. Nat'l Ins. Co.*,
   198 F.3d 1332 (11th Cir. 1999).....................................................................20

*Aldana v. Del Monte Fresh Produce N.A., Inc.*,
   741 F.3d 1349 (11th Cir. 2014) ....................................................................17

*Arnold's Wines, Inc. v. Boyle*,
   515 F. Supp. 2d 401 (S.D.N.Y. 2007) ...........................................................25

*Cano v. Baker*,
   435 F.3d 1342 (11th Cir. 2006) ....................................................... 20-21, 21

*Cavaliere v. Allstate Ins. Co.*,
   996 F.2d 1111, 1115 (11th Cir. 1993) ....................................................20, 21

*Coleman v. Morris-Shea Bridge Co., Inc.*,
   2021 WL 4409088 (N.D. Ala. Sept. 27, 2021) ...........................................41

*Cordoba v. DIRECTV, LLC*,
   942 F.3d 1259 (11th Cir. 2019) ....................................................................17

*Gonzalez v. Chinatown Hotel Corp.*,
   808 F. App'x 999 (11th Cir. 2020) ...............................................................33

* *Granholm v. Heald*,
   544 U.S. 460 (2005) ...............................................................................passim

*Griffin v. Swim-Tech Corp.*,
   722 F.2d 677 (11th Cir. 1984) ...............................................................20, 21

*In re Ferry*,
   631 B.R. 790 (Bankr. M.D. Fla. 2021) .......................................................39

*Kemp v. United States*,
   596 U.S. ___, 2022 WL 2111354 (June 13, 2022) .........................22, 23, 24

*Kemp v. United States*,
   857 Fed. Appx. 573 (11th Cir. 2021).....................................................22, 24

*Lebamoff Enterprises, Inc. v. Snow*,
   757 F. Supp. 2d 811 (S.D. Ind. 2010) ..........................................................25

*Lewis v. Sec'y, Dep't of Corr.*,
   2022 WL 1576751 (11th Cir. May 19, 2022) ...........................................17

*Matter of Garfinkle*,
   672 F.2d 1340 (11th Cir. 1982) ...................................................................39

*McKinnon v. Blue Cross & Blue Shield*,
   935 F.2d 1187 (11th Cir. 1991) ...................................................................40

*McNickle v. Bankers Life and Cas. Co.*,
   888 F.2d 678 (10th Cir. 1989) .....................................................................37

*New Hampshire v. Maine*,
   532 U.S. 742 (2002) ...................................................................15, 40, 42

*Oakes v. Horizon Fin., S.A.*,
   259 F.3d 1315 (11th Cir. 2001) ...................................................................33

*Phuc Quang Le v. Humphrey*,
   703 F. App'x 830 (11th Cir. 2017) ................................................. 34-35, 36

*Rease v. AT&T Corp.*,
   358 F. App'x 73 (11th Cir. 2009) .................................................................28

*Reynolds v. Roberts*,
   202 F.3d 1303 (11th Cir. 2000) ...................................................................33

*Rivera v. PNS Stores, Inc.*,
   647 F.3d 188, 193 (5th Cir. 2011) ...............................................................17

*Rodriguez v. GeoVera Specialty Ins. Co.*,
   2020 WL 4043201 (S.D. Fla. July 17, 2020) .............................................38

*SEC v. N. Am. Clearing, Inc.*,
   656 F. App'x 969 (11th Cir. 2016)........................................................17, 21

*Slater v. U.S. Steel Corp.*,
    871 F.3d 1174 (11th Cir. 2017) ...................................................41

*Sloss Indus. Corp. v. Eurisol*,
    488 F.3d 922 (11th Cir. 2007) ...........................................20, 21

*Smith v. Haynes & Haynes P.C.*,
    940 F.3d 635 (11th Cir. 2019) ...................................................41

*Stansell v. Revolutionary Armed Forces of Columbia*,
    771 F.3d 713 (11th Cir. 2014) ...........................................29, 33

*Tenn. Wine & Spirits Retailers Ass'n v. Thomas*,
    139 S. Ct. 2449, 204 L.Ed.2d 801 (2019) ....................5, 16, 45, 46

*Thompson v. Target Corp.*,
    861 F. App'x 325, 328 (11th Cir. 2021) .................................29, 31

*Town of Largo v. Imperial Homes Corp.*,
    309 So. 2d 571 (Fla. Dist. Ct. App. 1975) ...................................43

*United States v. Real Prop. Located at 2676 Larmie St., Fort Myers, Fl 33916*,
    2009 WL 260505 (M.D. Fla. Feb. 3, 2009) .................................. 42

*United Student Aid Funds, Inc. v. Espinosa*,
    559 U.S. 260 (2010) ........................................28, 29, 30, 31, 33

*Villas of Lake Jackson, Ltd. v. Leon Cnty.*,
    884 F. Supp. 1544 (N.D. Fla. 1995)............................................43

*Wine & Spirits Distributors of Fla., Inc. v. Arnold's Wines, Inc.*,
    No. 1D18-3549 (Fla. 1st DCA 2018) ....................................14, 41

*Wine & Spirits Distributors of Fla., Inc. v. Arnold's Wines, Inc.*,
    275 So.3d 555 (Fla. Dist. Ct. App. 2019) .................................4, 15

## Constitutional and Statutory Provisions

28 U.S.C. § 1291 ............................................... viii

28 U.S.C. § 1331 ............................................... viii

28 U.S.C. § 1343(a)(3) ................................................................ viii

28 U.S.C. § 2201 ......................................................................... viii

28 U.S.C. § 2202 ......................................................................... viii

42 U.S.C. § 1983 ......................................................................... viii

Fla. Stat. § 120.565 ......................................................................13

Fla. Stat. § 561.02 .....................................................................7-8

Fla. Stat. § 561.14(3) (2005) .........................................................3

Fla. Stat. § 561.54(1) ....................................................................8

Fla. Stat. § 561.545 ......................................................................8

Fla. Stat. §§ 561-569 ....................................................................8

**Rules**

F.A.C. Rule 28-105.001 ................................................................8

Rule 59(3), Fed. R. Civ. P. ...................................................passim

Rule 60(a), Fed. R. Civ. P. ...................................................passim

Rule 60(b)(1), Fed. R. Civ. P...............................................passim

Rule 60(b)(4), Fed. R. Civ. P...............................................passim

Rule 60(c)(1), Fed. R. Civ. P...............................................27, 28

**Other Authorities**

11 Charles Allen Wright et al., Federal Practice and Procedure § 2854....34, 35, 36, 37,

11 Charles Allen Wright et al., Federal Practice and Procedure § 2862....29, 30, 32

Fla. Sen. Comm. on Regul. Indus., Rep. No. 2006-146, Direct Shipment of Wine to Florida Consumers 13 (2005), https://www.flsenate.gov/UserContent/Committees/Publications/InterimWorkProgram/2006/pdf/2006-146rilong.pdf ........................................................13

12 J. Moore et al., Moore's Federal Practice § 60.44 [1][a] ............................30

## STATEMENT OF JURISDICTION

**Jurisdiction of district court**.  The case was brought pursuant to 42 U.S.C. § 1983 to vindicate Plaintiffs' rights under the United States Constitution.  The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3), which confer original jurisdiction on federal district courts to hear suits alleging the violation of rights and privileges arising under federal law.  Plaintiffs sought declaratory relief authorized by 28 U.S.C. §§ 2201-2202.

**Jurisdiction of court of appeals.**  Defendant appeals from a final decision of the District Court denying a Rule 60 motion.  This court has jurisdiction pursuant to 28 U.S.C. § 1291, which authorizes the courts of appeals to hear appeals from final decisions of the district court.

**Filing dates.**  The district court entered denied the DABT's Motion to Clarify and Modify (or in the Alternative, to Vacate) Injunction on January 19, 2022.  Doc. 212.  Defendant filed notice of appeal on February 16, 2022.  Doc. 217.

**Finality**.  This appeal is from a final judgment that disposes of all parties' claims.

## <u>STATEMENT OF THE ISSUES</u>

1. Whether the District Court abused its discretion when it denied Defendant's Rule 60 motion to modify a sixteen-year-old final judgment and permanent injunction, when the Rule requires such motions to be brought within one year.

2. If the Court reaches the merits:

   A. Whether Defendant has waived appeal by continually acquiescing to the judgment and injunction and issuing a written administrative opinion that the injunction was binding.

   B. Whether Defendant's previous position in 2018 that the injunction was valid judicially estops it from asserting now a divergent position.

   C. Whether the reliance interests of sellers and shippers in following a 2018 Declaratory Statement issued by the Defendant equitably estops modifying a consent injunction to which it otherwise acquiesced.

   D. Whether Defendant's concerns about an injunction withstand the *Tennessee Wine* Court's extension of *Granholm*.

1

## STATEMENT OF THE CASE

**Nature of the Case**

Approaching two decades after final judgment was entered in favor of the Plaintiffs, the Florida Division of Alcoholic Beverages and Tobacco (the "DABT") asked the District Court to revise its final judgment and narrow the scope of a consent injunction to which it had agreed, acquiesced, and upheld during the previous sixteen years. As it did below, the DABT offers numerous arguments on appeal why it believes the injunction originally should have been written more narrowly; nevertheless, the District Court did not abuse its discretion in denying a challenge that could have been (but was not) raised in a timely motion to the District Court or an appeal to this Court and, importantly, it is long past the time in which the Federal Rules of Civil Procedure authorize a motion such as the DABT's.

In 2005, the parties stipulated to a declaratory judgment and injunction in the wake of *Granholm v. Heald*, 544 U.S. 460, 125 S. Ct. 1885 (2005), and the United States District Court for the Middle District of Florida held that FLA. STATS. §§ 561.54 and 561.545 violated the Commerce Clause and enjoined enforcement "against out-of-state vendors and producers." Doc. 196. District Court Judge James D. Whittemore ("District Judge Whittemore") held Florida's direct shipment

statues unconstitutional to the extent they "prohibit[ed] out-of-state vendors[1] and producers from delivering wine directly to Florida residents whereas in-state producers are not so prohibited." Doc. 196 at 2. After entry of the injunction, the Defendant did not raise any concerns about its wording or scope, nor did the DABT attempt to do so for sixteen years hence.

Rather, in November 2021, the DABT brought its Motion to Clarify and Modify (or in the Alternative, to Vacate) Injunction (the DABT's "Motion to Clarify and Modify") before the same District Judge Whittemore. Therein, for the first time, it argued the District Court had intended the scope of the injunction to apply only to wineries – yet had incorrectly inserted "out-of-state vendors," a phrase for which the ink had dried sixteen years prior. Relief under Rule 60 cannot be granted this many years later.

Even if the DABT might have prevailed on its request for a narrower injunction sixteen years ago, it is procedurally barred from raising it now, and waiver applies. Additionally, counsel for Plaintiffs petitioned in 2018 for a declaratory statement before the DABT inquiring whether an "out-of-state retailer . . . can sell, ship, and

---

[1] A "vendor" is any business "licensed to sell alcoholic beverages at retail only." Fla. Stat. § 561.14(3) (2005).

3

deliver wine directly to consumers in the State of Florida." Doc. 206-1. The

response by the Defendant, the governmental body responsible for administering

and enforcing the direct shipment laws, was simple: not only was the issue "settled,"

as FLA. STATS. §§ 561.54 and 561.545 applied to "out-of-state wine producers and

wine vendors," Doc. 206-1 at 5, ¶ 13 (citing Doc. 196), but also the DABT would

abide by the 2005 injunction – which by its plain language still enjoined

enforcement.[2]  Thus, the DABT is judicially estopped from later championing a

divergent view. *Id.*  And, by minimizing on appeal the prolonged period when the

DABT refrained from enforcing "against all out-of-state wine retailers," the DABT

underscores the compelling reliance interests at play preventing a reversal of

position and initiation of enforcement.  Appellant's Opening Br. at 4.

Finally, the DABT's position before this Court that the injunction should

be narrowed because retailers are not subject to *Granholm* is further foreclosed and

untenable given the Supreme Court's clarification in 2019 that state regulation of

---

[2] Notably, the Defendant also defended its declaratory statement in an appeal before the state's court of appeals.  *See* Appellee's Brief in *Wine & Spirits Distributors of Fla., Inc. v. Arnold's Wines, Inc.*, 275 So.3d 555 (Fla. Dist. Ct. App. 2019) (*per curiam* affirmance).

retailers was also subject to Commerce Clause scrutiny. *See Tenn. Wine & Spirits Retailers Ass'n v. Thomas*, 139 S. Ct. 2449, 204 L.Ed.2d 801 (2019).

**Course of Proceedings and Disposition Below.**

While the underlying action commenced in 1999, the appeal before this Court began in essence in 2005.[3] On May 25, 2005, in the immediate wake of the Supreme Court's decision in *Granholm*, District Judge Whittemore conducted a status conference and directed the parties to submit a joint proposed order to the Court.[4] Doc. 183. On June 23, 2005, an Agreed Motion for Judgment on the Pleadings and Memorandum in Support was accordingly filed by Plaintiffs. Doc. 188. On August 5, 2005, District Judge Whittemore issued an Order granting the agreed motion. Doc. 196. On October 13, 2005, Plaintiffs filed a Notice of Settlement and Request that Case be Closed, Doc. 204, and on October 18, 2005, the District Court dismissed the case in observance of the grant of the agreed

---

[3] The DABT's lengthy recitation of the pre-2005 disposition, while comprehensive, is largely irrelevant to the decision before this Court; the appeal deals primarily with the January 19, 2022 denial of the DABT's motion. *See* Appellant's Br. at 5-8. For this reason, Plaintiffs do not repeat the prior history, but rather defer to District Judge Whittemore's concise retelling in his January 19, 2022 Order. *See* Doc. 212 at 1-2.

[4] Notably, the District Court also instructed the parties that, "[i]f they are unable to agree on a joint order, they shall file individual proposed orders to the Court for consideration." Doc. 183. The DABT did not file its own proposed order, but rather joined in and agreed to the Plaintiffs' proposed order.

motion in the August 5, 2005 Order and pursuant to the parties' notice of settlement.  Doc. 205.

Over sixteen years later, on November 22, 2021, the DABT filed a Motion to Clarify and Modify (or in the Alternative, to Vacate) Injunction.  Doc. 206.  The motion was heard by District Judge Whittemore, who had entered the 2005 injunction.  On December 6, 2021, Plaintiffs responded with a brief in opposition. Doc. 207.  On January 19, 2022, District Judge Whittemore denied the DABT's motion.  Doc. 212.  The DABT moved for reconsideration on February 10, 2022, Doc. 215, which the District Court denied the following day.  Doc. 216.  On February 16, 2002, the State filed its Notice of Appeal.

## STATEMENT OF FACTS

The DABT appeals a denial of its Rule 60 Motion, in which it asked the District Court to clarify and modify, or alternatively, vacate the injunction it had entered on an agreed motion filed by Plaintiffs on June 23, 2005.  Namely, it sought clarification and modification of the operative portion of the District Court's August 5, 2005 final order that provided:

> Plaintiffs' Agreed Motion for Judgment on the Pleadings (Dkt. 188) is GRANTED.  It is ORDERED AND ADJUDGED that §§ 561.54 and 561.545, Florida Statutes, violate the Commerce Clause to the extent that they discriminate against out-of-state wineries by prohibiting them from

6

selling and delivering wine directly to customers in Florida when in-state wineries are not so prohibited.

IT IS FURTHER ORDERED that Defendant is ENJOINED from enforcing Florida Statutes §§ 561.54 and 561.545 against out-of-state vendors and producers.

Doc. 196 at 2.

In the foregoing June 23, 2005 Agreed Motion for Judgment on the Pleadings, the Plaintiffs asserted the "pleadings, the stipulation of fact . . . , the decision by the Supreme Court in *Granholm* . . . , and the concession by the [DABT] that [it] cannot prevail" justified an entry in the Plaintiffs' favor that the statutes were "unconstitutional as applied to wine." Doc. 188 at 2. After indicating Plaintiffs and the DABT had "conferred and agreed on the wording of the proposed Order" filed with the motion and that judgment should be entered on the proposed order, Plaintiffs requested the District Court grant final judgment declaring in part that "Florida Statutes §§ 561.54 and 561.545 violate the Commerce Clause by prohibiting *out-of-state wine vendors* from selling and delivering their products directly to Florida Residents." *Id.* (emphasis added).

At that time, the two statutes cited in the final order comprised Florida's direct shipment laws, for which the Defendant is responsible for administration, enforcement, and the answering of questions concerning applicability. *See* FLA.

7

STAT. § 561.02, F.A.C. Rule 28-105.001 *et seq*. *See also* Appellant's Br. at 10, 10

n.4.  Section 561.54(1) provided that it was

> unlawful for common or permit carriers, operators of privately owned
> cars, trucks, buses, or other conveyances or out-of-state manufacturers or
> *suppliers*[5] to make delivery from without the state of any alcoholic
> beverage to any person, association of persons, or corporation within the
> state, except to qualified manufacturers, distributors, and exporters of
> such beverages so delivered and to qualified bonded warehouses in this
> state.

(Emphasis added).  Similarly, Section 561.545 provided that:

> *[a]ny person in the business of selling alcoholic beverages* who
> knowingly and intentionally ships, or causes to be shipped, any alcoholic
> beverage from an out-of-state location directly to any person in this state
> who does not hold a valid manufacturer's or wholesaler's license or
> exporter's registration issued by the Division of Alcoholic Beverages and
> Tobacco or who is not a state-bonded warehouse is in violation of this
> section.

(Emphasis added).  In practice, these statutes prohibited out-of-state vendors and

producers from delivering wine directly to Florida residents whereas in-state

vendors and producers were not so prohibited.  *See* Doc 206-1 at 5 (addressing the

"applicability of sections 561.54 and 561.545" and "the sale and delivery of wine

by out-of-state retailers").

---

[5] Chapters 561-569 of the Florida Statutes left "Supplier" or "Suppliers" undefined
in 2005, and they remain undefined to this date.

Plaintiffs brought the present action in November 1999, challenging the constitutionality of the direct shipment laws. *See* Doc 1. In their amended complaint, Plaintiffs alleged the laws violated the Commerce Clause by prohibiting out-of-state shipment directly to Florida residents. *See* Doc 36. Plaintiffs "want[ed] to and intend[ed] to purchase bottled wines from *suppliers* outside the state of Florida and have those wines shipped directly to Florida residents" and argued that "[o]ut-of-state suppliers will sell wine to Plaintiffs and deliver it to their residences in Florida if the laws prohibiting such interstate shipments are repealed or declared unconstitutional." *Id.* at ¶¶ 17, 20 (emphasis added). The amended complaint was not limited to shipping by producers. *See id.* at ¶ 21 ("Florida Statutes §§ 561.54(1), 561.545(1), and other sections of the Florida Beverage Laws pertaining to licensing, residence and delivery regulations, individually and collectively prohibit direct shipments of wine and other alcoholic beverages from out-of-state *suppliers* to Plaintiffs' residences within the State of Florida.") (emphasis added). Importantly, Plaintiffs sought relief in part in the form of an "injunction against Defendants prohibiting them from enforcing the provisions of the Florida Beverage Law prohibiting or punishing the delivery of

alcoholic beverages from an out-of-state *supplier* to an adult Florida Resident."[6]

*Id.* at 7 (emphasis added).

In 2005, the Supreme Court held in *Granholm* that functionally identical

statutory schemes in New York and Michigan violated the Commerce Clause;

namely, it held that state laws "allow [ing] in-state wineries to sell wine directly to

consumers in that State but [ ] prohibit[ing] out-of-state wineries from doing so"

violate the Commerce Clause in a manner that "is neither authorized nor permitted

by the Twenty-First Amendment."  544 U.S. at 466.

Given *Granholm*, the DABT conceded it could not prevail and that Florida's

direct shipment laws "are unconstitutional as applied to wine."  Doc. 188 at 2, 4.

Elsewhere, the DABT conceded as to the unconstitutionality of the direct shipment

laws "to the extent that they discriminated against out-of-state wineries" by

prohibiting the selling and delivering of wine directly to consumers when their in-

---

[6] The plea for injunction relief contained in the amended brief was also accompanied by pleas for judgments declaring unconstitutional Florida Statutes §§ 561.54(1), 561.545(1) and a "violation of the Commerce Clause for Defendants to apply . . . other provisions of Florida's Beverage Laws . . . in a manner that prohibits out-of-state *suppliers* from delivering wine directly to adult Florida residents."  Doc. 36 at 7 (emphasis added).

state counterparts were not so prohibited. *See* Doc. 189-2 at 1 (proposed order). *See also* Doc. 196 at 1 (District Judge Whittemore's order).

Plaintiffs, thus, filed an agreed motion for judgment on the pleadings asserting that the concession by the DABT, along with the stipulation of fact and the decision in *Granholm*, justified judgment in Plaintiffs' favor that Florida's direct shipment laws "are unconstitutional as applied to wine." Doc. 188 at 2. The motion indicated both parties had conferred and agreed to the wording of a proposed order filed with the motion and that judgment should be entered upon it. *Id.* Plaintiffs further requested the Court to issue an order and grant final judgment declaring that the direct shipment laws violated the Commerce Clause "by prohibiting out-of-state wine *vendors* from selling and delivering their products directly to Florida residents." *Id.* (emphasis added).

The proposed order filed with the motion stated: "It is ADJUDGED that Florida Statutes §§ 561.54 and 561.545 violate the Commerce Clause to the extent that they discriminate against out-of-state wineries by prohibiting them from selling and delivering wine directly to customers in Florida when in-state wineries are not so prohibited." Doc. 189-2.

And, as the DABT admits in its opening brief on appeal, the parties employed the word "vendors" throughout the proposed declaratory judgment attached to the

agreed motion.  Importantly, the parties stated in the proposed consent order that

the direct shipment laws

> do what is forbidden by *Granholm*: they apply only to out-of-state
> *vendors*, require out-of-state wine to pass through a wholesaler and a
> retailer, and prohibit out-of-state *vendors* from delivering wine directly to
> Florida residents, and prohibit any *vendor*, carrier, or private person from
> transporting wine into the state.  The scheme is unconstitutional under
> *Granholm*.

Doc. 189-2 at 2 (emphases added).

As a result, in granting the agreed motion for judgment on the pleadings,

the District Court employed the word "vendors" as well; it "ORDERED AND

ADJUDGED" the direct shipment laws violated the Commerce Clause "to the

extent that [it] discriminate[d] against out-of-state wineries" and enjoined the

DABT "from enforcing Florida Statutes §§ 561.54 and 561.545 against out-

of-state *vendors* and producers."  Doc. 196. (emphasis added).

On August 5, 2005, District Judge Whittemore issued an Order granting the

agreed motion.  *Id.*  On October 18, 2005, the District Court entered a dismissal

pursuant to the parties' notice of settlement, which dismissed the matter and closed

the case.  Doc. 205.  Also in October, the Florida Senate Committee on Regulated

Industries issued a report in which it advised the Florida Senate that it had

consulted with the DABT regarding the *Bainbridge* final order.[7]  *See* Appellant's

Opening Br. at 12 n.6.

Thirteen years later – after several DABT directors came and went – Plaintiffs'

counsel petitioned the Defendant on behalf of numerous wine retailers across the

country who wished to sell, ship and deliver directly to Florida consumers, seeking

a declaratory statement "as to whether an out-of-state retailer" could "sell, ship,

and deliver wine directly to consumers in the State of Florida" and, if not, if "such

an out-of-state winery or retailer [could] qualify for any type of license that would

allow it to do so."[8]  Doc. 206-1 at 1.  Several Florida alcoholic-beverage industry

groups intervened in the declaratory statement proceeding, and the DABT granted

intervention and issued a declaratory statement on August 15, 2018.  *Id.* at 2-3.  In

answering counsel's inquiry, the declaratory statement indicated:

---

[7] FLA. SEN. COMM. ON REGUL. INDUS., REP. NO. 2006-146, DIRECT SHIPMENT OF WINE TO FLORIDA CONSUMERS 13 (2005), https://www.flsenate.gov/UserContent/Committees/Publications/InterimWorkProgram/2006/pdf/2006-146rilong.pdf.

[8] Fla. Stat. § 120.565 provided: "Any substantially affected person may seek a declaratory statement regarding an agency's opinion as to the applicability of a statutory provision . . . as it applies to the petitioner's particular set of circumstances."

13

II. APPLICABILITY OF SECTIONS 561.54 AND 561.545, FLORIDA
STATUTES, TO OUT-OF-STATE WINE RETAILERS

13.  The applicability of sections 561.54 and 561.545, Florida Statutes, to
out-of-state wine producers *and wine vendors* is settled.  See *Bainbridge
v. Turner*, No. 8.99-CV-2681-T-27TBM (M.D. Fla. 2005) (enjoining the
Division from enforcing section[s] 561.54 and 561.545, Florida Statutes,
against out-of-state manufacturers and vendors of wine).  The Division
abides by the terms of the order entered in *Bainbridge*, and Petitioner's
inquiry is answered accordingly.

CONCLUSION

14. . . . This declaratory statement addresses only the sale and delivery of
wine by out-of-state retailers. . . .
15.  This statement is based on the facts described in[]Petitioner's petition
and legal research conducted by the Division . . . .

Doc. 206-1.

Later in 2018, a group of trade associations appealed the declaratory statement

in state court.  *See Wine & Spirits Distributors of Fla., Inc. v. Arnold's Wines, Inc.*,

No. 1D18-3549 (Fla. 1st DCA 2018).  The DABT defended its "opinion as to the

applicability of sections 561.54 and 561.545, Florida Statutes, in light of

*Bainbridge v. Turner*, No. 8:99-CV-2681-T-27TBM (M.D. Fla. 2005)," arguing in

sum that the court

should affirm the Department's declaratory statement. [T]he petition for
declaratory statement complied with the requirements of statute and rule,
the Department cannot ignore the district court's order in *Bainbridge*, and
the Department correctly pointed to the district court's order in

14

> *Bainbridge* as it applies to the Appellee-Petitioner's particular circumstances.

Appellee Answer Br. at 3, *Wine & Spirits Distributors of Fla., Inc.*, No. 1D18-3549. Specifically, the Defendant asserted the "declaratory statement *properly expressed the Department's opinion* as to the applicability of Florida statutes to out-of-state wineries and vendors." *Id.* at 8 (emphasis added). The Florida Appeals Court affirmed the declaratory judgment in a *per curiam* decision. *See Wine & Spirits Distributors of Fla., Inc. v. Arnold's Wines, Inc.*, 275 So.3d 555 (Fla. Dist. Ct. App. 2019).

Having formally represented in court that the injunction was valid, the DABT cannot now take the opposite position. The doctrine is known as judicial estoppel. *See New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S.Ct. 1808 (2002) ("[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position.") (citing 18 MOORE'S FEDERAL PRACTICE § 134.30, p. 134-162 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.")). *See infra* Section II.B.

15

In 2019, the Supreme Court reaffirmed its *Granholm* decision in *Tennessee Wine,* extending the *Granholm* doctrine to retailers and firmly asserting that §2 of the Twenty-First Amendment "allows each State leeway to enact the measures that its citizens believe are appropriate to address the public health and safety effects of alcohol use and to serve other legitimate interests, but it does not license the States to adopt protectionist measures with no demonstrable connection to those interests." 139 S. Ct. at 2474.

And, on November 22, 2021, the DABT finally filed its Motion to Clarify and Modify, seeking by Rule 60 a clarification and modification, or alternatively vacatur, of the sixteen-year-old injunction. In that motion, and not before, the DABT first argued that the District Court had mistakenly made the injunction too broad and that "the proposed injunction (and its accompanying agreed motion) employed ambiguous terminology that rendered the proposed injunction internally inconsistent and seemingly beyond the scope of the litigation," blamed the Court for "attempt[ing] to rectify the parties' inartful drafting by revising the proposed agreed injunction," and insisted that ambiguity persisted in the ultimate injunction. Doc. 206 at 2. District Judge Whittemore, the same judge who had issued the injunction, denied the DABT's motion to amend it. *See* Docs. 196, 212.

16

## STANDARD OF REVIEW

This Court reviews for abuse of discretion a district court's denial of a belated motion to modify and injunction filed pursuant to Federal Rule of Civil Procedure 60(b), except that this Court reviews de novo a denial of a Rule 60 motion to vacate the judgment completely for lack of jurisdiction.  *See SEC v. N. Am. Clearing, Inc.*, 656 F. App'x 969, 972 (11th Cir. 2016) (citing *Am. Bankers Ins. Co. of Fla. v. Nw. Nat'l Ins. Co.*, 198 F.3d 1332, 1338 (11th Cir. 1999)); *Aldana v. Del Monte Fresh Produce N.A., Inc.*, 741 F.3d 1349, 1355 (11th Cir. 2014).  "A district court abuses its discretion if it applies an incorrect legal standard, follows improper procedures in making the determination, or makes findings of fact that are clearly erroneous."  *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1267 (11th Cir. 2019) (quotation marks omitted).  *See also Lewis v. Sec'y, Dep't of Corr.*, 2022 WL 1576751, at *1 (11th Cir. May 19, 2022) (quoting *Mincey v. Head*, 206 F.3d 1106, 1137 & n.69 (11th Cir. 2000)).  To the extent, as the DABT contends, the District Court should have applied Rule 60(a), it is also to be reviewed for abuse of discretion.  *Rivera v. PNS Stores, Inc.*, 647 F.3d 188, 193 (5th Cir. 2011).

## SUMMARY OF ARGUMENT

The Motion to Clarify and Modify implored District Judge Whittemore to reopen a final judgment, hear further argument, and then issue a new, modified injunction narrower in scope. This Court's review of the denial of this motion is limited to an abuse of discretion. The District Court correctly found it was entirely too late for this, and it did not abuse its discretion in finding that Rule 60 provides no such relief. In short: the DABT's argument, as properly considered under Rule 60(b)(1) for inadvertent mistake, was untimely; Rule 60(b)(4) did not apply as the DABT did not make the requisite arguments; and Rule 60(a) likewise provided no relief as there was no clerical error or mistake arising from oversight and omission. We contend this to be the end of the case – full stop.

If this Court does in fact reach the merits of the case, we posit like the DABT that words in consent injunction *do matter*[9]; however, unlike the DABT we further acknowledge that those same words impart meaning and place signing parties on notice of that meaning. Sixteen years later, the plain language of the injunction

---

[9] *See* Appellant's Opening Br. at 14 ("'In the hierarchy of law, language is king. Words matter in constitutions, treaties, statutes, rules, cases, and contracts.' . . . Words matter in consent injunctions as well.") (quoting *Pottinger v. City of Miami*, 805 F.3d 1293, 1295 (11th Cir. 2015)).

itself torpedoes the DABT's case.  The Defendant agreed to an injunction; was

knowledgeable of the injunction that District Judge Whittemore issued; acquiesced

to it for the following sixteen years; and later endorsed and reinforced it by issuing

a declaratory statement and subsequently defending the interpretation on appeal.

Accordingly, waiver must apply at some time *prior to* the filing of the DABT's

motion to clarify and amend.  Equitable estoppel further applies and shields the

reliance interests of sellers and shippers, and judicial estoppel operates to prohibit

the DABT from taking a position opposite from that taken in 2018.

     And, importantly, the *Tennessee Wine* Court made clear that *Granholm* applied

to retailers as well as producers, precluding the DABT's argument on the merits

that the inclusion of vendors in the injunction was constitutionally invalid.

## **ARGUMENT**

## I.  THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE DABT'S RULE 60 MOTION

###   A. The 11th Circuit's Review of Rule 60 Motions Is For an Abuse Of Discretion

The denial of a motion filed pursuant to Rule 60(b) is reviewed for an abuse of

discretion.[10]  When this Court reviews for abuse of discretion, it means "the district

_____

[10] Plaintiffs acknowledge, as mentioned previously, that this Court reviews de novo

court had a 'range of choice' that [this Court] cannot reverse just because we might have come to a different conclusion had it been our call to make." *Sloss Indus. Corp. v. Eurisol*, 488 F.3d 922, 934 (11th Cir. 2007). To demonstrate an abuse of discretion, the appellant "must demonstrate a justification so compelling that the court was required to vacate its order." *Cavaliere v. Allstate Ins. Co.*, 996 F.2d 1111, 1115 (11th Cir. 1993) (quotation omitted).

"An appeal of a ruling on a Rule 60(b) motion . . . is narrow in scope, addressing only the propriety of the denial or grant of relief and does not raise issues in the underlying judgment for review." *Am. Bankers Ins. Co. of Fla.*, 198 F.3d at 1338. Applying that standard of review, "to overturn the district court's denial of [a Rule 60(b) motion], it is not enough that a grant of the motion[]might have been permissible . . . ; rather, the decision to deny the motion[]must have been sufficiently unwarranted as to amount to an abuse of discretion." *Griffin v. Swim-Tech Corp.*, 722 F.2d 677, 680 (11th Cir. 1984); *Cano v. Baker*, 435 F.3d

---

a denial of a motion filed under Rule 60(b)(4) to set aside a judgment as void; however, Plaintiffs argue here and later in this brief that, as District Judge Whittemore found, the motion is correctly conceived as a Rule 60(b)(1) motion, and not as a motion brought under Rule 60(b)(4) or Rule 60(a).

1337, 1342 (11th Cir. 2006) (noting the appellant's burden on appeal from the denial of a Rule 60(b) motion is heavy).

This Court's review of the denial of the motion before it is narrow: whether the decision to deny the motion was "sufficiently unwarranted" as to amount to an abuse of discretion. *Griffin*, 722 F.2d at 680. This Court may "come to a different conclusion had it been [this Court's] call to make," *Sloss Indus. Corp.*, 488 F.3d at 934, without reversing the district court. *See Griffin*, 722 F.2d at 680. As the decision to deny was sufficiently *warranted*, *see infra* Section I.B, and no justification so compelling that the court is required to vacate the order has been demonstrated by the Defendant, *see Cavaliere*, 996 F.2d 1111 at 1115, the DABT fails its heavy burden on appeal. *See Cano*, 435 F.3d at 1342.

B. The Supreme Court's Recent Decision in *Kemp v. United States* Forecloses the Defendant DABT's Rule 60(b)(1) Motion

In denying the DABT's 2021 Rule 60(b) motion for relief from the 2005 consent injunction, the district court did not abuse its discretion. *See N. Am. Clearing, Inc.*, 656 F. App'x at 973. In toto, the Motion to Clarify and Modify is properly characterized as seeking relief from a final judgment based on, among other things, a "mistake" – specifically, District Judge Whittemore's alleged error of law in inserting the phrase "out-of-state vendors and producers" into the

21

sentence which enjoined enforcement of Florida Statutes §§ 561.54 and 561.545.[11]

The DABT argues that the injunction was mistakenly too broad. Such relief from

inadvertent mistake, or a motion likewise seeking to reopen a case based on

"mistake," falls squarely under Subsection (b)(1) of Rule 60 and is prescribed to a

reasonable time not to exceed one year. Accordingly, as the motion raised in this

case was brought in an *unreasonable* time exceeding one year, the denial of such a

motion is not an abuse of discretion.

> Federal Rule of Civil Procedure 60(b)
>
> permits "a party to seek relief from a final judgment, and request reopening of his case, under a limited set of circumstances." *Gonzalez v. Crosby*, 545 U. S. 524, 528 (2005). Under Rule 60(b)(1), a party may seek relief based on "mistake, inadvertence, surprise, or excusable neglect."
>
> \* \* \* \* \*
>
> Rule 60(c) imposes deadlines on Rule 60(b) motions. All must be filed "within a reasonable time." Rule 60(c)(1). But for some, including motions under Rule 60(b)(1), that "reasonable time" may not exceed one year. Rule 60(c)(1).

---

[11] To the extent that the DABT attempts to argue that the District Court mistakenly selected Rule 60(b)(1) when the Defendant's intention was to plead the motion under Rule 60(b)(4), we observe that a court is not bound by the characterization presented by counsel. *See Kemp v. United States*, 596 U.S. ___, ___ S. Ct. ___, 2022 WL 2111354, slip. op. at 4 (June 13, 2022) ("So, in Kemp's view, his motion challenging the District Court's timeliness ruling was cognizable under Rule 60(b)(6) . . . ."). *See also Kemp v. United States*, 857 Fed. Appx. 573, 576 (11th Cir. 2021) (*per curiam*) ("The district court properly construed Kemp's motion as one under Rule 60(b)(1) . . . .").

*Kemp v. United States*, 596 U.S. ___, ___ S. Ct. ___, 2022 WL 2111354 (June 13, 2022).

The United States Supreme Court recent upholding of this Court's judgment in *Kemp v. United States* forecloses the State's untimely motion altogether. In the postconviction context, appellant Kemp alleged a district court "misappl[ied] controlling law to record facts" in denying his April 2015 request for sentence vacatur under 28 U.S.C. §2255. *Id.*, slip op. at 1, 2, 6 n.2. As a result, Kemp motioned the district court in June 2018 to reopen the case, employing arguments under several Rule 60(b) subsections. The district court rejected the timeliness argument premised on judicial mistake[12] and held, in the alternative, that Kemp's Rule 60(b) motion was itself untimely. *Id.*, slip op. at 3.

---

[12] As the Supreme Court recounts:

> Specifically, Kemp argued that reopening [his 28 U.S.C. §2255 proceedings] was warranted because this Court's Rule 13.3 prescribes that the 90-day clock to seek certiorari does not begin to run until all parties' petitions for rehearing are denied, and the Eleventh Circuit denied his codefendants' rehearing petitions in May 2014. Thus, according to Kemp, the 1-year period to file his §2255 motion began in August 2014, making his April 2015 motion timely.

*Kemp*, 596 U.S. ___, slip op. at 2-3.

23

This Court affirmed, agreeing with Kemp that the original §2255 request "appear[ed] to have been timely," but nonetheless concluding that he had filed his Rule 60(b) motion too late.  857 Fed. Appx. 573, 575-576 (11th Cir. 2021) (*per curiam*).  This Court found that the Rule 60(b) motion alleged "precisely the sort of judicial mistak[e] in applying the relevant law that Rule 60(b)(1) encompasses," and thus was subject to Rule 60(b)(1)'s one-year limitations period.  *Id.* at 576.

The Supreme Court affirmed.  It rejected arguments that Kemp's challenge of the timeliness ruling was cognizable under Rule 60(b)(6) instead of Rule 60(b)(1); though Kemp "invoked Rule 60(b)(6)," the motion "arguably sought reopening based on a . . . 'mistake' covered by Rule 60(b)(1)."  *Id.*, slip op. at 2.  The Court examined the text, structure, and history of Rule 60(b)(1) and determined the otherwise broad term "mistake" cannot be said to exclude judicial errors of law.  *See id.*, slip op. 4-10.  And "[b]ecause Kemp's Rule 60(b) motion alleged such a legal error," the Supreme Court affirmed the Eleventh Circuit's judgment that "the motion was cognizable under Rule 60(b)(1), subject to a 1-year limitations period, and, therefore, untimely."  *Id.* at 10.

The alleged error of law in the present case from which the DABT sought relief is the type of error clearly contemplated under *Kemp* and by Rule 60(b)(1).  Like Kemp, who alleged that the District Court erred by misapplying the controlling law

of 28 U.S.C. §2255 to record facts involving the dates of denial of his

codefendants' rehearing petitions, the DABT attempted to employ a Rule 60(b)

remedy similarly.  It intended to, at a minimum, amend and/or correct the

application of the newly controlling Supreme Court *Granholm* case to the record

facts as presented in the proposed injunction.[13]  *See* Doc. 206 at 11-13 (arguing in

part that the "injunction itself demonstrates that the Court understood that

*Granholm* did not involve retailers . . . .").  *See also* Doc. 206 at 13 ("If the

injunction actually extends to out-of-state retailers, the [DABT] must allow out-of-

state retailers to ship wine directly to Florida consumers but can still prohibit those

same retailers from shipping beer and spirits directly to Florida consumers.  There

is no basis for such a distinction, either logically or in *Granholm*.").

   The DABT attempts a sleight of hand on appeal and argues it "did *not* assert

that the District Court mistakenly *did* enjoin the [DABT] from enforcing the

Statutes against all out-of-state retailers."  Appellant's Opening Br. at 30.  Given

---

[13] Soon after *Granholm*, there was a debate as to whether the case was limited to producers, or extended to sales and shipments by wine retailers. *See, e.g.*, *Arnold's Wines, Inc. v. Boyle*, 515 F. Supp. 2d 401 (S.D.N.Y. 2007), *aff'd*, 571 F.3d 185 (2d Cir. 2009); *Lebamoff Enterprises, Inc. v. Snow*, 757 F. Supp. 2d 811 (S.D. Ind. 2010), *aff'd sub nom. Lebamoff Enterprises, Inc. v. Huskey*, 666 F.3d 455 (7th Cir. 2012).  This confusion was clarified in 2019 by *Tennessee Wine*, 139 S. Ct. 2449, 204 L. Ed. 2d 801.

the plain meaning of the words used in the injunction that District Judge

Whittemore issued, Plaintiffs are perplexed by this assertion.  If the DABT is

claiming that it knew a contrary intent of the district court, *see, e.g.*, Doc. 206 at 16

("[I]t is equally clear that the Court intended to issue an injunction that was limited

accordingly."), it and this Court need look no further than the clear wording of the

injunction that was issued then to figure out the court's true intent.[14]  Moreover,

District Judge Whittemore later explained in his own words that his use of the

phrase of "vendors and producers" was deliberate:

> The parties' proposed order provided that the State would be "ENJOINED
> from enforcing Florida Statutes §§ 561.54 and 561.545," without
> identifying the entities against whom enforcement was enjoined.  (Dkt.
> 189-2 at 2).  To correct this omission, this Court added the phrase "out-
> of-state vendors and producers" to this sentence, with the result that the
> injunction enjoined the State "from enforcing Florida Statutes §§ 561.54

---

[14] Put plainly: having adjudged in the consent judgment paragraph that the statutes
in question "discriminate[d] against out-of-state wineries," the Court intentionally
penned the injunction paragraph(s) in such a matter to "FURTHER ORDER[]"
enforcement be dropped against not only the aforementioned wineries but also out-
of-state vendors.  Doc. 196 at 2.

and 561.545 against out-of-state vendors and producers." (Dkt. 196 at 2).
. . . [T]he Court intentionally included the challenged language in the
injunction[.][15]

Doc. 212 at 4.

In this light, it becomes clear that the DABT sought to correct what it perceives

*now* (or, in 2021) to be an inadvertent mistake. The intent for both the parties and

behind District Judge Whittemore's order have been known for sixteen years. If

the words placed into the proposed injunction and the issued injunction failed to

capture that intent – they **did** capture the intent, however – the DABT should have

acted upon it immediately. Hoisting freshly baked "intent" and protesting to the

contrary cannot avoid the clear prescription that Rule 60(b)(1) motions to be filed

within a reasonable time not to exceed one year. *See* Rule 60(c)(1).

The DABT's motion falls directly within the purview of Rule 60(b)(1). As

such, *Kemp*'s guidance is clear. Rule 60(c)(1)'s stricture on Rule 60(b)(1) is

likewise clear. Under any standard, the State's Rule 60(b)(1) motion was not filed

---

[15] The agreed motion for judgment on the pleadings and proposed order, both of
which overtly mention out-of-state "vendors" as distinguished from "wineries,"
further confirm the intentionality of the choice. *See* Docs. 188, 189-2. Further proof:
Plaintiffs requested that the Court declare that the direct shipment laws violated the
Commerce Clause "by prohibiting out-of-state wine *vendors* from selling and
delivering their products directly to Florida residents." *Id.* (emphasis added).

27

within a reasonable time, as required by Rule 60(c).  *See, e.g., Rease v. AT&T Corp.*, 358 F. App'x 73, 75 (11th Cir. 2009) (finding that, to the extent that the appellant's motion was premised on Rule 60(b)(1), the appellant's motion was time-barred because he filed it more than six years after the relevant judgment). The District Court did not abuse its discretion in denying relief.

C. Rule 60(b)(4) Does Not Apply, Despite the DABT's Confusion Below and on Appeal

District Judge Whittemore did not abuse his discretion in rejecting the DABT's argument that the entire judgment and injunction should be vacated under Rule 60(b)(4) for lack of jurisdiction.  The DABT correctly notes that if the motion had properly fallen under Subsection (b)(4), unlike one brought under Rule 60(b)(1), it would have been allowed beyond the constraints of one year.  *See* Fed. R. Civ. Proc. 60(c)(1) (requiring Rule 60(b) motions to be "made within a reasonable time" but prescribing only motions under Subsections (b)(1)-(3) be brought under one year).  But the grounds for such a challenge are exceedingly small, *see United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 270 (2010) (hereinafter *Espinosa*), and, as discussed below, were not argued or present before the District Court.

28

The United States Supreme Court has made clear that "Rule 60(b)(4) applies only in the rare instance where a judgment is premised either on a certain type of jurisdictional error or on a violation of due process that deprives a party of notice or the opportunity to be heard."[16] *Espinosa*, 559 U.S. at 271; *Stansell v. Revolutionary Armed Forces of Columbia*, 771 F.3d 713, 737 (11th Cir. 2014) (citing *Espinosa.*, 559 U.S. at 271). The list of such infirmities is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would swallow the rule. *Espinosa*, 559 U.S. at 271. Moreover, a motion under Rule 60(b)(4) is not a substitute for a timely appeal. *Id.* (citing in part 12 J. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 60.44 [1][a], p. 60-150).

---

[16] To the extent the DABT opines the Supreme Court has not "definitively interpreted" Rule 60(b)(4), Plaintiffs point to the numerous times that this Court has interpreted and applied the guidance (preceding the footnote call number) provided in *Espinosa*, including in, *inter alia*, *Thompson v. Target Corp.*, 861 F. App'x 325, 328 (11th Cir. 2021), and *Stansell v. Revolutionary Armed Forces of Columbia*, 771 F.3d 713, 737 (11th Cir. 2014). Squabbling, and framing Supreme Court statements as dicta, does not change that fact. *See also* 11 CHARLES ALLEN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2862 (3d ed.) ("A judgment is not void merely because it is erroneous. It is void *only if* the court that rendered it lacked jurisdiction of the subject matter, or of the parties, *or* if it acted in a manner inconsistent with due process of law.") (emphasis provided) (internal footnotes omitted).

The DABT did not argue or prove that the District Court lacked jurisdiction or that its due process rights were violated.  First, the DABT has not identified any "jurisdictional error" in the district court's final judgment.[17]  *Id.*  When the DABT gave approval to the agreed motion for judgment on the pleadings and consented to a judgment and injunction, it admitted that the district court had personal and subject matter jurisdiction over the case, and the DABT does not dispute those admissions now.  *See* Doc. 188 (Agreed Motion for Judgment on the Pleadings); Appellant's Opening Brief at viii ("The District Court had subject matter jurisdiction pursuant to 28 U.S.C. §1331 . . . .").

To be sure, the DABT has never made explicit arguments based on jurisdiction.[18]  In a recent affirmance of the denial of a Rule 60(b)(4) motion, this

---

[17] An error is "jurisdictional" if it "deprive[s] th[e] courts of authority to consider [the case] on the merits." *Espinosa*, 559 U.S. at 270 n.9 (citing *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-516 (2006); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 167 (2010)).  In appropriate circumstances, unlike here, a Rule 60(b)(4) motion is an available mechanism for collaterally attacking a prior judgment issued by a court that lacked subject-matter or personal jurisdiction.  *See* 12 J. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 60.44[1][a], at 60-149 to 60-150 ("A judgment is valid whenever the court that renders it has jurisdiction over the subject matter and the parties."); 11 CHARLES ALLEN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2862, at 434-441 (3d ed.) ("A judgment is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties . . . .") (footnotes omitted).
[18] Even if the motion to clarify and modify did contain implied, backhanded

30

Court found against an appellant who, though he explicitly argued jurisdictional defects, failed to make the requisite demonstration that the district court lacked even an "arguable basis" for jurisdiction. *Thompson v. Target Corp.*, 861 F. App'x 325, 328 (11th Cir. 2021) (quoting *Espinosa*, 559 U.S. at 271). Unlike the *Thompson* appellant, however, the DABT only argues explicitly *sua sponte* judicial **mistake** and does not argue or demonstrate the district court lacked any arguable basis for jurisdiction. *See* Appellant's Opening Brief at 44. *Cf. Espinosa*, 559 U.S. at 271 ("Federal courts considering Rule 60(b)(4) motions that assert a judgment is void because of a jurisdictional defect generally have reserved relief only for the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction.").

Second, the DABT has failed to identify any "violation of due process that deprive[d] [it] of notice or the opportunity to be heard." *Espinosa*, 559 U.S. at 271. Courts have most often invoked this ground for Rule 60(b)(4) relief in cases

---

arguments addressing jurisdiction, the DABT has not made clear on appeal how it would otherwise have been able to petition a court which lacked personal or subject matter jurisdiction for "a minor *modification* of the injunction to reflect the [parties'] intention to limit the scope of the injunction." Doc. 206 at 18 (emphasis provided). *Compare id.* ("To be clear, the [DABT] does not now seek to invalidate the injunction in the first instance.").

31

involving default judgments or absent class members, where the party seeking

relief from the judgment had not actively participated in the earlier proceedings.

*See* FEDERAL PRACTICE & PROCEDURE § 2862, at 441 n.11 (collecting cases). The

DABT, by contrast, had actual notice of the proceedings as well as a full and fair

opportunity to litigate on the merits, and it participated in the proceedings while

represented by capable and experienced counsel. *See, e.g.*, Doc. 183 (Proceedings

of Status Conference, counsel for DABT appeared); Doc. 188 ("Plaintiffs and

Defendant have conferred and agree on the wording of the proposed Order filed

with this motion, and that judgment should be entered upon it."); Doc. 206 (Motion

to Clarify and Modify). There is accordingly no basis for setting aside or

modifying the final judgment under Rule 60(b)(4) under the due process prong.

Instead of arguing that the District Court lacked jurisdiction or its due process

rights were violated, the DABT asserted that the District Court's *power to enter the*

*consent judgment* rested on the parties' agreement itself, Doc. 206 at 17 (quoting

*Life Ins. Co. of N. Am. v. Campbell*, No. 6:13-cv-104-Orl-22TBS, 2013 WL

6070009, at *3 (M.D. Fla. Nov. 18, 2013) ("[T]he parties' consent animates the

legal force of a consent decree.")), and argued that a final consent judgment and

injunction containing relief allegedly broader than the parties consented – "such

that it 'does not reflect such an agreement'" – must thus be vacated as *exceeding*

*the scope* of the parties' agreement.[19]  *Id.* at 17 (quoting *Haagen-Dazs Co. v.*

*Marina Ice Cream Co.*, 935 F.2d 542, 543 (2d Cir. 1991), 18.  However, a

judgment is not void "simply because it is or may have been erroneous."

*Espinosa*, 559 U.S. at 270 (quoting in part MOORE'S FEDERAL PRACTICE §

60.44[1][a], pp. 60-150 to 60-151).  *See also Stansell*, 771 F.3d at 737; *Oakes v.*

*Horizon Fin., S.A.*, 259 F.3d 1315, 1319 (11th Cir. 2001).  Any additional grounds

for voidness argued by the DABT on appeal are similarly meritless and non-

persuasive because they do not claim lack of jurisdiction or a violation of due

process.

    D. Additionally, Rule 60(a) Does Not Govern the DABT's Request

    The DABT contends on appeal that it moved the District Court "to do nothing

more" than "clarify" the injunction.  Appellant's Opening Brief at 30.  As argued

---

[19] For this reason, Plaintiffs posit the DABT has unartfully confused relief for voidness contemplated under Rule 60(b)(4) with relief predicated on a direct appeal.  *See, e.g.*, *Gonzalez v. Chinatown Hotel Corp.*, 808 F. App'x 999, 1001 (11th Cir. 2020) (noting the Court has jurisdiction to review on direct appeal a consent judgment differing from the one entered by the appealing party); *Reynolds v. Roberts*, 202 F.3d 1303, 1312 (11th Cir. 2000) (noting that parties have standing to challenge judgments on direct appeal to which they consented where "the judgement [sic] allegedly deviates from the terms of the parties' agreement.") (citing 5 Am. Jur. 2d Appellate Review § 619 (1995)).  As direct appeal is unavailable to the DABT, it seems to have selected to highjack a Rule 60(b) maneuver.

above, Plaintiffs dispute this characterization: fitting squarely under Rule 60(b)(1),

the motion sought to *modify* what the DABT alleged was an inadvertent "mistake."

The material change desired – reconsidering how the *Granholm* case applied to the

parties and record facts – is categorically unlike the "clerical mistake"

contemplated by Rule 60(a).  Accordingly, District Judge Whittemore did not

abuse discretion by determining Rule 60(a) did not govern.  He reaffirmed this

intent to use the phrase "producers and vendors" in his 2022 denial of the DABT's

motion.  *See* Doc. 212.

Rule 60(a) allows a district court to "correct a clerical mistake or a mistake

arising from oversight or omission."

> A great variety of matters have been held by the courts to come within Rule
> 60(a).  The court may correct clerical errors, the failure to enter judgment
> or an opposing party's motion, the omission of a filing date, and
> mathematical computations.  It has been held that it also may correct a
> misnomer, the age of a person to be naturalized, a designation of the year
> for which taxes were assessed, and the addition of costs to a judgment. . . .

11 CHARLES ALLEN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2854

(3d ed.).  Such types of mistakes contemplated under Rule 60(a) categorically

differ from the "mistakes" contemplated by Rule 60(b), however.  This Court has

expounded:

> A "district court may act under Rule 60(a) only to correct mistakes or
> oversights that cause the judgment to fail to reflect what was intended at

> the time." *Vaughter v. E. Air Lines, Inc.*, 817 F.2d 685, 688-91 (11th Cir. 1987).    We have repeatedly cautioned that a "district court is not permitted, however, to clarify a judgment pursuant to Rule 60(a) to reflect a new and subsequent intent because it perceives its original judgment to be incorrect." *Weeks v. Jones*, 100 F.3d 124, 128-29 (11th Cir. 1996). Indeed, "errors that affect substantial rights of the parties are outside the scope of Rule 60(a) . . . ." *Warner v. City of Bay St. Louis*, 526 F.2d 1211, 1212 (5th Cir. 1976).

*Phuc Quang Le v. Humphrey*, 703 F. App'x 830, 835 (11th Cir. 2017).

That is, Rule 60(b) (or its counterpart, Rule 59(3)) corrects errors of a more substantial nature.  *See* 11 CHARLES ALLEN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2854.  "When the change sought is substantive in nature, such as . . . the broadening of a summary-judgment motion . . . , relief is not appropriate under Rule 60(a)."  *Id.*

The DABT expends significant breath to convince this Court that the Plaintiffs never obtained the injunction that it did in 2005.  It layers its version of "how the parties' rights were actually adjudicated" over a persistent drumbeat of what it perceives in hindsight to be "the parties' and the District Court's intentions (at the time the injunction was drafted)"[20] – all in a methodic attempt to deviate from the actual injunction which was entered.  Appellant's Opening Br. at 16.  In doing that,

---

[20] Plaintiffs remind the Court that the DABT's claim for mutual agreement is false; the DABT cannot speak for the Plaintiffs or to their intent.

it explains that the District Court "must have intended for 'vendors and producers' to mean 'wineries' and explained that this intended ruling was obfuscated by the use of imprecise language *such that clarification is necessary*." *Id.* at 32 (emphasis provided). The "clarification," it reasons, would then be permitted under Rule 60(a).

In its logical shuffle, though, the DABT exceeds the corrective action authorized by Rule 60(a). Namely, the DABT moved to *redefine*, rather than clarify, the phrase "against out-of-state vendors and producers," Doc. 196 at 2, to mean "against out-of-state wineries." Doc. 206 at 14. Using its own words: the DABT asked for a "requested modification to the injunction" – i.e. to the phrase "vendors and producers" – in an attempt to "bring it in line with" a more limited interpretation. Doc. 206 at 16 n.4. This cannot be achieved through Rule 60(a). *See* 11 CHARLES ALLEN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2854 ("[A] motion under Rule 60(a) only can be used to make the judgment or record speak the truth and cannot be used to make it say something other than what originally was pronounced.").

More importantly, the DABT's desired interpretation in favor of "out-of-state wineries" would "affect substantial rights of the parties." *Phuc Quang Le*, 703 F. App'x at 835 (quoting *Warner*, 526 F.2d at 1212)). Rights, which were litigated

36

and adjudicated by consent to judgment on the pleadings in 2005, later endorsed by acquiescence in the subsequent period, and reinforced by the enforcement agency's own declaratory statement in 2018, would be impinged by the narrower injunction argued for by the DABT. This cannot be achieved through Rule 60(a). *See* 11 CHARLES ALLEN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2854 ("Rule 60(a) is not a vehicle for relitigating matters that already have been litigated and decided, . . . .").

Lastly, shoehorning the provision for "out-of-state vendors and producers" into a "clerical mistake or mistake arising from oversight or omission" misses the mark: District Judge Whittemore "intentionally included" the challenged language to correct an omission in the proposed order. Doc. 212 at 4. *See* 11 CHARLES ALLEN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 2854 ("Rule 60(a) is not a vehicle . . . to change what has been deliberately done. . . ."). *See also McNickle v. Bankers Life and Cas. Co.*, 888 F.2d 678, 682 (10th Cir. 1989) ("Rule 60(a) may be relied on to correct what is erroneous because the thing spoken, written, or recorded is not what the person *intended* to speak, write, or record; it may not be used to change something that was *deliberately done even though it was later discovered to be wrong*; correction under the rule should require no additional proof." (internal citations omitted)).

37

For these reasons, this "Hail Mary" attempt by the DABT to relieve itself from Rule 60(c)'s clear one-year requirement is unsuccessful.  Rule 60(a) is not available to parties as a jurisdictional lifeline.  Under it, the DABT cannot motion the court to redefine in favor of "out-of-state wineries," a new and subsequent intent that would "affect substantial rights of the parties," in contravention of the District Court's intentional provision of language.  The District Court did not abuse its discretion in finding the DABT not entitled to relief under Rule 60(a).  *See Rodriguez v. GeoVera Specialty Ins. Co.*, No. 18-23585-CIV, 2020 WL 4043201, at *2 (S.D. Fla. July 17, 2020) (citing *OneSource Facility Servs., Inc. v. Mosbach*, No. 205CV525FTM34DNF, 2008 WL 11430023, at *2 (M.D. Fla. Nov. 18, 2008) ("The Judgment entered by the Court accurately reflects the Court's intended judgment based upon the Verdict rendered by the jury . . . Rule 60(a) is not the appropriate mechanism to correct such an error.").

## II.  THE INJUNCTION, WHICH APPLIES TO OUT-OF-STATE VENDORS, HAS GONE UNCHALLENGED FOR SIXTEEN YEARS

Alternatively, if this Court reaches the merits, it should find the injunction is binding upon the Defendant for three reasons: 1) the DABT waived appeal by acquiescence; 2) judicial estoppel prohibits the DABT from taking the opposite

position than it took in 2018; and 3) equitable estoppel shields sellers and shippers'

reliance interests.

   A. Defendant DABT Waived Appeal by Continually Acquiescing to the
      Judgment and Injunction and Issuing a Written Administrative Opinion that
      the Injunction was Binding

Waiver is fatal to the DABT's position as a matter of law.  Succinctly, waiver is

the "intentional relinquishment of a known right."  *In re Ferry*, 631 B.R. 790, 800

(Bankr. M.D. Fla. 2021) (quoting *Matter of Garfinkle*, 672 F.2d 1340, 1347 (11th

Cir. 1982)).  "Waiver requires (1) the existence at the time of the waiver a right,

privilege, advantage, or benefit which may be waived; (2) the actual or

constructive knowledge thereof; and (3) an intent to relinquish such right,

privilege, advantage, or benefit."  *Id.* (quoting *Garfinkle*, 672 F.2d at 1347).  The

sixteen-year period following District Judge Whittemore's judgment, the

Defendant's administrative opinion in 2018, and its subsequent defense of the

position as "properly express[ing] the Department's opinion" in a subsequent

appeal, Appellee Answer Br. at 8, *Wine & Spirits Distributors of Fla., Inc.*, No.

1D18-3549, clearly evidence waiver and an intentional relinquishment of a known

right in the appeal of the issued judgment and injunction.  *See Garfinkle*, 672 F.2d

at 1348 ("Appellants acquiesced in the contracting process and were silent after the

39

referendum vote.  Their conduct warrants the inference of relinquishment of a

known right.").

B. Judicial Estoppel Prohibits Defendant DABT from Taking the Opposite
   Position from That Taken in 2018

Judicial estoppel is an equitable doctrine intended "to protect the integrity of the

judicial process."  *New Hampshire*, 532 U.S. at 749-750, 121 S.Ct. 1808 (quoting

*Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir. 1982)).  Judicial

estoppel is properly invoked when a party makes a "calculated assertion of

divergent sworn positions [that makes] a mockery of justice."  *McKinnon v. Blue*

*Cross & Blue Shield*, 935 F.2d 1187, 1192 (11th Cir. 1991) (quoting *Am. Nat'l*

*Bank v. FDIC*, 710 F.2d 1528, 1536 (11th Cir. 1983)).  The Supreme Court

suggested several "non-exclusive" factors to consider when determining whether to

apply judicial estoppel, including that (1) "a party's later position must be 'clearly

inconsistent' with its earlier position"; (2) a court adopted a party's position such

that "judicial acceptance of an inconsistent position in a later proceeding would

create 'the perception that either the first or the second court was misled'"; and (3)

"the party seeking to assert an inconsistent position would derive an unfair

advantage or impose an unfair detriment on the opposing party if not estopped."

*New Hampshire*, 532 U.S. at 750-751, 121 S.Ct. 1808 (acknowledging that there

40

are "no inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel"). Courts in the Eleventh Circuit generally apply a two-factor test for judicial estoppel,[21] and this Court has instructed consideration of "the totality of the facts and circumstances of the case" to determine whether a plaintiff is making a mockery of the judicial system. *See Smith v. Haynes & Haynes P.C.*, 940 F.3d 635, 647 (11th Cir. 2019).

Applying judicial estoppel is appropriate in this case. Arguing opposite positions in front of two courts makes a mockery of justice. In 2018, the DABT affirmed it would abide by District Judge Whittemore's 2005 decision — a decision it sought following years of litigation. *See, e.g.*, Docs. 183, 188. When the decision was later appealed in the state courts, the DABT defended its declaratory statement and, by extension, the injunction District Judge Whittemore had issued. *See Wine & Spirits Distributors of Fla., Inc.*, No. 1D18-3549. In 2021, the DABT then appeared before District Judge Whittemore in support of a divergent position. The Defendant

---

[21] *See Coleman v. Morris-Shea Bridge Co., Inc.*, No. 2:18-CV-00248-LSC, 2021 WL 4409088, at *8 (N.D. Ala. Sept. 27, 2021) (defining the two-factor test for judicial estoppel as whether (1) "allegedly inconsistent positions were made under oath in a prior proceeding"; and requiring that (2) "such inconsistencies must have been calculated to make a mockery of the judicial system") (quoting *Parker v. Wendy's Int'l Inc.*, 365 F.3d 1268, 1271 (11th Cir. 2004)); *see also Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1180-1181 (11th Cir. 2017) (en banc).

is judicially estopped from taking the second of these inconsistent positions, lest the judicial process of this case be perverted. *See New Hampshire*, 532 U.S. at 750, 121 S.Ct. 1808 ("[T]he rule is intended to prevent improper use of judicial machinery, [and] judicial estoppel is an equitable doctrine invoked by a court at its discretion." (internal quotations and citations omitted)).

C. Equitable Estoppel Shields the Reliance Interests of Sellers and Shippers

Estoppel asserted against the government involves the following four elements: (1) words, conduct or acquiescence that induced reliance; (2) willfulness or negligence with regard to the words, conduct or acquiescence; (3) detrimental reliance; and (4) affirmative misconduct by the government. *United States v. Real Prop. Located at 2676 Larmie St., Fort Myers, Fl 33916*, No. 207-CV-403-FTM-29SPC, 2009 WL 260505, at *2 (M.D. Fla. Feb. 3, 2009) (citing *United States v. McCorkle*, 321 F.3d 1292, 1297 (11th Cir. 2003); *Tefel v. Reno*, 180 F.3d 1286, 1302-1303 (11th Cir.1999)), *opinion corrected on other grounds*, No. 207-CV-403-FTM-29SPC, 2009 WL 2734805 (M.D. Fla. Aug. 24, 2009). With each of the four elements present, the circumstances taken together militate in this case against enforcement of the statutes against out-of-state vendors. The DABT's agreement to and support for the parties' motion for judgment on the pleadings and proposed injunction establish the first element; the silence and/or acquiescence until 2021

42

proves the second; and the third is demonstrated by the number of retailers wishing to direct ship to Florida consumers that sought the Defendant's declaratory statement in 2018.  *See supra*, Statement of Facts Section.  As for "affirmative misconduct," Plaintiffs point to the DABT's calculated attempt to reopen and relitigate this case in 2021 based on a newly alleged "intent" of the parties and District Judge Whittemore, *after providing unequivocal statements* concerning the applicability of Florida statutes to out-of-state vendors in the 2018 declaratory statement and subsequent defense before state courts.  *See Town of Largo v. Imperial Homes Corp.*, 309 So. 2d 571, 574 (Fla. Dist. Ct. App. 1975) ("In essence, the Town has asked us to rectify what it now considers to have been a 'mistake' made by its 1968 commission and perpetuated thereafter.  This, we cannot do.  The record amply supports the findings of the trial court resulting in estoppel against the Town.").  *See also Villas of Lake Jackson, Ltd. v. Leon Cnty.*, 884 F. Supp. 1544, 1568 (N.D. Fla. 1995) (collecting cases in which the government's acts went "beyond mere negligence" and "cause[d] serious injustice" such that the court found estoppel to apply), *opinion modified on reconsideration*, 906 F. Supp. 1509 (N.D. Fla. 1995), *and aff'd*, 121 F.3d 610 (11th Cir. 1997).

Put simply, regulatory enforcement of Florida statutes prior to *Granholm* prohibited out-of-state wine from being sold and shipped directly to Florida

consumers yet permitted such actions for in-state wine producers and shippers (*i.e.*, vendors). But, after the Supreme Court mandated similar treatment for in-state and out-of-state alcohol, the entry of an injunction agreed to by alcohol regulators gave the green light to enter the Florida direct consumer market. Out-of-state producers and out-of-state vendors – entities making long-term, bet-the-company business decisions – trusted that the eschewing of regulation was in accordance with *Granholm* and its underpinning guidance against "laws that burden out-of-state producers *or shippers* simply to give a competitive advantage to in-state businesses." 544 U.S. at 472, 125 S. Ct. at 1895 (emphasis provided). This eschewing lasted for sixteen years and was underscored by a silent Florida legislature. What else should shippers have thought?

And, when the Defendant provided guidance to retailers expressing desires to sell, ship and deliver directly to the Florida market, it did so clearly: the body responsible for administering and enforcing FLA. STATS. §§ 561.54 and 561.545 would abide by the terms in the 2005 injunction. Attempts to reopen and relitigate the case by alleging an "intent" that was not present in 2005, nor in 2018, nor subsequently in the defense of the declaratory statement before state courts, amounts to affirmative misconduct such that the DABT is equitably estopped from reversing its position to initiate enforcement against sellers and shippers.

44

## III. *TENNESSEE WINE* HELD THAT *GRANHOLM* APPLIES TO RETAILERS AS WELL AS PRODUCERS

After *Granholm*, circuit courts split as to whether the Supreme Court decision applied only to wine producers, or whether state laws regulating retailers were also subject to Commerce Clause scrutiny. The Supreme Court decided this issue in *Tennessee Wine*, when it indicated there was "no sound basis for this distinction" under the Commerce Clause. 139 S.Ct. at 2471. The Court emphasized:

> *Granholm* never said that its reading of history or its Commerce Clause analysis was limited to discrimination against products or producers. On the contrary, the Court stated that the Clause prohibits state discrimination against all "out-of-state economic *interests*," and noted that the direct-shipment laws in question "contradict[ed]" dormant Commerce Clause principles because they "deprive[d] *citizens* of their right to have access to the markets of other States on equal terms."

*Id.* (emphases provided in *Tenn. Wine*) (internal citations omitted) (citing 544 U.S. at 472, 473, 125 S.Ct. 1885). For this reason – if none other – the DABT's argued-for interpretation of District Judge Whittemore's injunction before this Court is not only obtuse but, more importantly, invalid and obsolete. *Tennessee Wine* precludes argument that the inclusion of vendors in the injunction was constitutionally invalid: Section 2 of the 21st Amendment "allows each State leeway to enact the measures that its citizens believe are appropriate to address the public health and safety effects of alcohol use and to serve other legitimate

45

interests, but it *does not license the States to adopt protectionist measures with no demonstrable connection to those interests*." *Id.* at 2474 (rejecting an "overly broad understanding" of § 2 of the 21st Amendment) (emphasis provided).

## <u>CONCLUSION</u>

For the reasons stated herein, the Plaintiffs respectfully request that the District Court's decision denying the Defendant's request for relief under Rule 60(b) be **AFFIRMED** in its entirety and that this Court order that Costs be taxed against the Defendant-Appellant pursuant to Rule 39(a)(2) and Circuit Rule 39-2 and for any other relief deemed reasonable.

Respectfully submitted,

/s/ Alexander B. Avtgis
Alexander B. Avtgis
Robert D. Epstein
James A. Tanford, *of counsel*
EPSTEIN SEIF PORTER & BEUTEL, LLP
50 S. Meridian St., Suite 505
Indianapolis, Indiana 46204
Tel:  317-639-1326
Fax:  317-638-9891
alexander.b.avtgis@gmail.com
rdepstein@aol.com
tanford@indiana.edu

*Attorneys for Appellees*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limits of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because it contains 10,493 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Eleventh Circuit Rule 32-4.

2. This brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Alexander B. Avtgis

## CERTIFICATE OF SERVICE

I hereby certify that I filed this brief electronically via the Court's electronic filing system on May 6, 2022, which will cause a notice of electronic filing to be sent to all counsel of record.

/s/ Alexander B. Avtgis

# STATUTORY ADDENDUM

**Fla. Stat. § 561.54.  Certain deliveries of beverages prohibited.**

(1) It is unlawful for common or permit carriers, operators of privately owned cars, trucks, buses, or other conveyances or out-of-state manufacturers or suppliers to make delivery from without the state of any alcoholic beverage to any person, association of persons, or corporation within the state, except to qualified manufacturers, distributors, and exporters of such beverages so delivered and to qualified bonded warehouses in this state.

(2) Any licensee aggrieved by a violation of this section may bring an action in any court of competent jurisdiction to recover for the state all moneys obtained by common carriers or permit carriers; obtained by operators of privately owned cars, trucks, buses, or other conveyances; or obtained by out-of-state manufacturers or suppliers as a result of the delivery of alcoholic beverages in violation of this section, and may obtain a declaratory judgment that an act or practice violates this section and enjoin any person from violating this section.  In addition to such relief, the court may order the confiscation and destruction of any alcoholic beverages delivered in violation of this section.  In assessing damages, the court shall enter judgment against a defendant for three times the amount of the delivery

charges proved or the fair market value of merchandise unlawfully brought into the state.  Payment or satisfaction of any judgment under this section, other than for costs and attorney's fees, shall be made in its entirety to the state.  In any successful action under this section, the court shall award the plaintiff costs and reasonable attorney's fees.

**Fla. Stat. § 561.545. Certain shipments of beverages prohibited; penalties; exceptions.**

The Legislature finds that the direct shipment of alcoholic beverages by persons in the business of selling alcoholic beverages to residents of this state in violation of the Beverage Law poses a serious threat to the public health, safety, and welfare; to state revenue collections; and to the economy of the state.  The Legislature further finds that the penalties for illegal direct shipment of alcoholic beverages to residents of this state should be made adequate to ensure compliance with the Beverage Law and that the measures provided for in this section are fully consistent with the powers conferred upon the state by the Twenty-first Amendment to the United States Constitution.

(1) Any person in the business of selling alcoholic beverages who knowingly and intentionally ships, or causes to be shipped, any alcoholic beverage from an

A-2

out-of-state location directly to any person in this state who does not hold a valid manufacturer's or wholesaler's license or exporter's registration issued by the Division of Alcoholic Beverages and Tobacco or who is not a state-bonded warehouse is in violation of this section.

(2) Any common carrier or permit carrier or any operator of a privately owned car, truck, bus, or other conveyance who knowingly and intentionally transports any alcoholic beverage from an out-of-state location directly to any person in this state who does not hold a valid manufacturer's or wholesaler's license or exporter's registration or who is not a state-bonded warehouse is in violation of this section.

(3) Any person found by the division to be in violation of subsection (1) shall be issued a notice, by certified mail, to show cause why a cease and desist order should not be issued.  Any person who violates subsection (1) within 2 years after receiving a cease and desist order or within 2 years after a prior conviction for violating subsection (1) commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

* * * * *

A-3